**In re John M. & Marilyn KAPSOS, Debtors.**

**Douglass WENDEL, Trustee, Plaintiff,**

v.

**John M. & Marilyn KAPSOS, Defendants.**

**Bankruptcy No. 81–01105–BKC–TCB. Adv. No. 81–0528–BKC–TCB–A.**

United States Bankruptcy Court, S. D. Florida.

Dec. 28, 1981.

Daniel Bakst, West Palm Beach, Fla., for trustee.

Mikel D. Greene, West Palm Beach, Fla., for debtors.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The trustee is opposing the discharge of both debtors under 11 U.S.C. § 727(a)(2)(A) and (B), (4)(A) and (D), and (5). (C. P. No. 1). The debtors have answered. (C. P. No. 5). The matter was tried on November 12 and December 1. The essential issue is the debtors' credibility.

The debtors came to Florida from Milwaukee two years ago and filed for bankruptcy in July, 1981. Their original schedules reported personal property worth $9,430, including household furnishings of $1,500. The creditors' meeting was held on August 11. The valuation of these assets was not questioned. It was called to their attention that their unencumbered assets exceed the allowable Florida exemptions. On August 28, they filed an amended schedule of their personal property reflecting a total value of $7,530, including $600 for the furnishings, a total reduction of $1,900. These reduced values left them with but $630 available for their general creditors.

In a financial statement, they gave on January 20, 1978, they had valued their household furnishings at $30,000. They did not sell or replace their furnishings when they moved to Florida. On November 17, a disinterested professional appraiser with 26 years experience selling similar property for estates valued the debtors household furnishings presently visible in the debtors' home at $9,225. Trustee's counsel had gained access to the debtors' house on October 10. Several pieces of obvious value that were present then were not present during the appraisal visit.

The debtors claim that various items such as an elephant collection made of jade and ivory, a collection of 12 dolls, described as collectors' items, and some bedroom furniture are owned by their three children aged 12 to 18 and that other personal property in their home was owned by a cousin. There is no independent evidence to substantiate either claim. The debtors' sworn schedules report that there is no "property held for another person".

The original schedules report "clothing, jewelry and a 12 gauge shotgun" worth $1,000. The debtors' amended schedules reduce that value to $400. Their financial statement of January 20, 1978 had reported jewelry worth $20,000 and a gun collection

worth $1,500. On March 20, four months before bankruptcy, the debtors told the police that "over a period of time, several items including a bicycle and jewelry are missing from residence". The value of the missing jewelry was given as $5,749. There was no sign of forced entry. The loss was covered by insurance. The wife presently works in a local jewelry store. The insurance claim was paid. The debtors cannot show what happened to the proceeds. The husband claims to have sold all but one piece of his gun collection. There is no independent record of this disposition, not even the receipt of payment.

These are intelligent, articulate, healthy persons in mid-life who acknowledge that they examined their schedules and claim them to be truthful. I do not believe their explanations summarized above nor that the jewelry was stolen nor that they prepared their schedules in good faith.

■ I find that each deliberately falsified his schedules in reporting his personal property and that each has deliberately concealed material items of his personal property both within one year before bankruptcy and after the filing of the petition and that each did so with an actual intent to hinder, delay and defraud the trustee and his creditors. I conclude that each should be denied discharge under § 727(a)(2)(A) and (B) and (4)(A).

■ The debtors have supplied the documents upon which the charges under § 727(a)(4)(D) were filed. They were initially withheld on the good faith advice of counsel. Those charges are, therefore, dismissed.

The 1978 financial statement reflected total assets of $727,000 debts of $209,000 and a net worth of $517,000. Their amended schedules show assets of $137,930 and liabilities of $510,000 or a net worth of less than zero. After deducting the homestead exemption and liens against their car, these debtors now admit to an estate of but $630 available for general creditors. Their unsecured debt totals $376,000. The 1978 assets included a home ($225,000) and a fractional interest in a lake home, a duplex, and two office buildings ($101,000 was the aggregate value of the debtors' fractional interests). They claim to have disposed of all this property but cannot account for its value.

■ The debtors' explanation for the swift and almost complete evaporation of their non-exempt assets which also includes the complete disappearance of their business equity (he was in the bar and restaurant business) is vague, implausible and almost completely devoid of any corroboration. I do not believe they have lost anything of consequence and I suspect they presently retain control over a net worth of at least $250,000 and perhaps double that sum. I find therefore, that each of the debtors has failed to explain satisfactorily the loss of their assets and the deficiency of their assets to meet their liabilities. It follows then that their discharges must also be denied under § 727(a)(5). 4 *Collier on Bankruptcy* (15th ed.) ¶ 727.08.

As is required under B.R. 921(a), a separate judgment will be entered denying discharge. Costs will be taxed on motion.