**In re John H. MATHERN and Sandra I. Mathern, Debtors.**

**UNITED MORTGAGE CORPORATION, Plaintiff,**

**v.**

**John H. MATHERN and Sandra I. Mathern, Defendants.**

**Bankruptcy 3–90–2677.**
**Adv. No. 3–90–300.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Feb. 21, 1992.

Timothy A. Sullivan, Patrick B. Hennessy, Best & Flanagan, Minneapolis, Minn., for plaintiff.

Dennis E. Grande, Priscilla McNulty, Mackall, Crounse & Moore, Minneapolis, Minn., for defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GREGORY F. KISHEL, Bankruptcy Judge.

This adversary proceeding came on before the Court on October 15, 1991, for hearing on Plaintiff's motion for summary judgment. Plaintiff appeared by its attorneys, Timothy A. Sullivan and Patrick B. Hennessy. Defendants appeared by their attorneys, Dennis E. Grande and Priscilla McNulty. Upon the moving and responsive documents, supporting affidavits and filed discovery responses, the arguments of counsel, and the other files, records, and proceedings herein, the Court makes the following order.

In this adversary proceeding, Plaintiff objects to the grant of a discharge under Chapter 7 to Defendants. Defendants filed their bankruptcy petition on June 18, 1990. Plaintiff is one of their pre-petition creditors.[1] Plaintiff's objection to discharge

---

1. Defendants scheduled Plaintiff's claim as being in the amount of $258,204.06, and as being secured by a lien against a four-plex residential property in Newport, Minnesota, of a value of $145,000.00. They now acknowledge that Plaintiff sold these properties at a sheriff's fore-

sounds under 11 U.S.C. §§ 727(a)(2), 727(a)(3), and 727(a)(4).[2]

## PROCEDURAL STANDARD FOR MOTION AT BAR

Plaintiff now moves for summary judgment under FED.R.CIV.P. 56, as incorporated by FED.R.BANKR.P. 7056. Under these rules, on a motion for such relief,

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to to interrogatories, and admissions on file, together with the [supporting] affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

FED.R.CIV.P. 56(c).

In a landmark trilogy of decisions in 1986, the Supreme Court gave its strongest endorsement yet for the use of summary judgment to winnow out factually-unsupported claims from litigation in the federal courts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Because the right to summary judgment is not specific to either side in civil litigation, the rationale of these decisions applies with equal strength to a Rule 56 motion made by a plaintiff to establish its claim, and to one made by a defendant to defeat a plaintiff's claim.

In either case, the parties must have had adequate time for discovery. After that, if one party believes that there is no triable fact dispute as to a claim or defense which is in suit, and that it is legally entitled to relief on that claim or defense, it may move for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. If the moving party is a defendant, it carries its initial burden "by 'showing'—that is, pointing out to the [trial] court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554; *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992); *City of Mount Pleasant, Iowa v. Assoc. Electric Coop., Inc.*, 838 F.2d 268, 273–74 (8th Cir.1988). If it is a plaintiff seeking to establish its claim, of course, it carries its initial burden by mustering all of the evidence which establishes the elements of the claim, and then pointing out the lack of evidence denying those elements' existence.

To successfully resist the motion, the nonmoving party must produce countering evidence going to the claim or defense in question, which would support a jury verdict in its own favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. at 2511–12; *Heideman v. PFL, Inc.*, 904 F.2d 1262, 1265 (8th Cir.1990). This responsive evidence "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 586, 106 S.Ct. at 1356; it must be significantly probative, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11, *First Nat'l Bank of Arizona v. Cities Service Co., Inc.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20

---

closure sale and that it holds a deficiency judgment against them.

**2.** In pertinent part, these statutes provide:
The court shall grant the debtor a discharge, unless—

  •   •   •   •   •

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
(A) property of the debtor, within one year before the date of filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;
(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.
(4) the debtor knowingly and fraudulently, in or in connection with the case—
(A) made a false oath or account

  •   •   •   •   •

L.Ed.2d 569 (1968), *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990), and *The Prudential Ins. Co. of America v. Whitney*, 954 F.2d 516, 518–19 (8th Cir. 1992). If the nonmoving party's evidence does not meet this test, and if the moving party then shows that the law requires judgment in its favor on the uncontroverted facts, the court must grant the motion. FED.R.CIV.P. 56(c), as incorporated by FED. R.BANKR.P. 7056; *Poller v. Columbia Broadcasting Co.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962).

## UNCONTROVERTED GENERAL FACTS

For the present motion, Plaintiff's counsel invoked all three pleaded statutory theories, but made their most focused and detailed argument on facts and law on the count under § 727(a)(4). Certain basic facts are common to all three counts, and are uncontroverted.[3]

They are as follows: Defendants are husband and wife. About 1980, John Mathern[4] left his prior occupation as a life insurance salesman. He went to work as a residential building contractor, for a Hastings, Minnesota company known as Frank M. Langenfeld & Sons Contracting. This company later changed its name to "FML, Inc.," and Mathern became one of its shareholders. In the course of his business activity, Mathern became acquainted with Jeffrey Johnson, a certified public accountant who maintained offices in West St. Paul, Minnesota. The two started working together on various real estate developments and investments, Johnson furnishing tax planning advice, and Mathern doing much of the development and administration. Both Mathern and Johnson made various decisions for their projects, though Johnson apparently made most of the technical organizational decisions for a number of their business entities. At some point they began using the business name "1985–3 Partnership" for some of these activities.

During the early and mid–1980s, Defendants and Johnson individually acquired a number of single-family homes and multifamily "four-plex" residential buildings in the Twin Cities suburbs from FML, Inc.[5] They held the properties as investments, renting them out to tenants. In the mid–1980s, local authorities significantly increased the real estate taxes on these properties. Reacting to that, and either in contemplation of, or in the wake of, the Tax Reform Act of 1986, Johnson and Mathern formed limited partnerships to hold fractional or full ownership interests in the properties. They formed a corporation called "1985–3 Partnership, Inc." to be the general partner in these partnerships. From 1986 through 1990, they commingled rents from at least five of the properties whose record title now reposed in the limited partnerships, in one bank account held under the name "1985–3 Partnership."

As evidenced by Defendants' tax returns for 1986 through 1989, John Mathern received substantial income during those years via payments from an entity variously named in the returns as "1985–3", "1985–3 Properties," "1985–3 Partnership," and "1985–3 Partnership Properties." The amounts averaged approximately $71,-500.00 per year. They were disbursed from the checking account previously noted. In each of these returns, Defendants scheduled Mathern as an owner of one-half of the outstanding interest in this entity. They filed their 1989 joint income tax return in mid-October, 1990, after their bankruptcy filing.

Before Defendants' bankruptcy filing, Mathern and Johnson were also involved in the activities of three or more other business entities operated under similar names which all included the letters "J.A." Of these, a corporation known as J.A. Development, Inc. ("JADI"), formed in mid–1985, appears to have been the most active. Through this corporation, Mathern and

---

**3.** Other facts or fact allegations are specific to one or two counts, and will be noted as part of the analysis in the discussion section of this order.

**4.** All further references to "Mathern" shall signify John Mathern alone.

**5.** FML, Inc. had constructed most or all of these buildings.

Johnson continued residential development and construction throughout the late 1980s, much as Mathern had earlier carried on through FML, Inc., though generally in single-family housing. With funds from the commingled-rent account, 1985–3 Partnership provided substantial working capital to JADI. Mathern was involved in home sales for JADI, from the point of customer solicitation, through general contracting and the supervision of construction. Mathern personally guaranteed loans which JADI took out from third parties. For several years before Debtors' bankruptcy filing, Johnson and Mathern each took a salary from JADI in a gross annual amount of $4,000.00. Up to late 1989, JADI made payments to 1985–3 Partnership to repay the prior infusions of working capital. Shortly before Defendants' bankruptcy filing, it stopped making these payments; at the same time, it started making much more substantial salary payments to Johnson and Mathern. At the time of the bankruptcy filing, Mathern was receiving $5,000.00 per month in salary and "bonuses" from JADI.

When Defendants filed for bankruptcy, one or both of them held interests as limited or general partners in entities known as 409 Van Dyke Limited Partnership and Hemmingway Heights Limited Partnership, and interests under several contracts for deed on real estate located on Monroe Street in Columbia Heights, Minnesota.

Defendants noted in the caption of their bankruptcy petition that Mathern was a surety or security for seven different entities denoted as limited partnerships, and for FML, Inc. The 409 Van Dyke and Hemmingway Heights partnerships were not among those named. In the initial entries on their Statement of Financial Affairs, they noted Mathern's occupation as "General Residential Construction," and his employer as "J.A. Development"; in answer to the query as to whether they had been in a partnership or engaged in any business during the six years immediately preceding their filing, they listed only the names of the seven entities designated as limited partnerships in their case caption. In response to the question eliciting detailed information for the nature, location, and name of their business, they recited only:

> In 1987 debtor, John Mathern, took over 100 percent ownership in FML, Inc., at that time an oral agreement was entered into with Jeffrey A. Johnson who is the 100 percent owner of debtor's employer, J.A. Development, Inc. Under that agreement, each owner would exchange 50 percent of the interest in their respective company in [sic] some point and [sic] time when both were profitable. FML, Inc. is defunct and the agreement deemed void.

On their Schedule B–1, they made entries for their homestead; for two four-plex buildings in Eagan, Minnesota (noting, in the space calling for the nature of their interest, "Owner: Wescott Hills Limited Partnership"); for several four-plexes in Cottage Grove, Minnesota (noting "Owner: Grove Limited Partnership"); for "Columbia Heights Condos," with a stated address of "4673–4675 Monroe"; and for two four-plexes in Newport, Minnesota. In Items t. and u. of their Schedule B–2, which called for disclosure of all of their interests in corporations, partnerships, and other business entities, they recited the names of only the seven entities named in their case caption, without specifying the nature or magnitude of their interests in them. They valued all of these interests at zero.

On September 24, 1990, Plaintiff's counsel served and filed motions for an extension of the deadline for its filing of complaints under 11 U.S.C. §§ 523(c) and 727, for authority to take Defendants' examinations under FED.R.BANKR.P. 2004, and to compel Defendants to produce certain documents for the Rule 2004 examinations. Plaintiff scheduled the hearing on those motions for October 15, 1990. On October 10, 1990, Defendants filed amended Schedules B–2 and B–4. The only changes which they made on their Schedule B–2 related to wearing apparel, a piano, and a fractional ownership interest in a horse. It appears that these amendments were prompted by their Trustee's pending objection to their claim of exemptions in these assets and

certain others. Defendants have not filed any other amendments to their petition, statements, and schedules.

## DISCUSSION

### I. 11 U.S.C. § 727(a)(3).

Plaintiff's motion is most easily resolved as to its count under 11 U.S.C. § 727(a)(3). In response to Plaintiff's discovery requests, Defendants have given Plaintiff's counsel access to tens of thousands of individual documents relating to the 50–odd business entities in which Mathern had been involved or in which he had had interests. Plaintiff's counsel have admitted "that a mountain of documents have been made available ...," but then have complained that they were simply "pointed to [Defendants'] files without any guidance to separate the relevant from the irrelevant." These files and their "information ... reveal ... an almost impenetrable maze of transactions by and between numerous business entities," according to Plaintiff's counsel. Plaintiff produces no affidavit or evidence in support of this motion, relying only on these unverified assertions of its counsel.

The gist of the argument under § 727(a)(3), then, seems to be that Defendants' failure to produce a comprehensive "road map" of this maze, or at least a summary of all of their assets, liabilities, and transactions over some undefined period of time, mandates an inference: Defendants either failed to keep such records, destroyed them at some point, or now conceal them. In response, Defendants assert that they "have offered to guide Plaintiff through their books and records," and have produced several summaries of the content of their records. They say little more than this, as a matter of fact or of law.

Plaintiffs' assertions are no basis for a grant of summary judgment, either as a matter of general procedure under Rule 56 or as a matter of substance under § 727(a)(3). Given the relative lack of focus in the assertions, Defendants' equally-broad rejoinder is probably enough to create a triable fact dispute; it certainly suggests that the "maze" is capable of navigation. In any event, Plaintiff's own moving documents virtually establish a triable fact dispute on their face.

This all is so because of the very nature of the governing law.[6] Section 727(a)(3) serves a statutory goal of fair dealing, by requiring a debtor to furnish a satisfactory written record and accounting for his current financial condition and for the nature of his business transactions for a reasonable period in the past, upon demand of a trustee or creditor. *In re Drenckhahn,* 77 B.R. 697, 708 (Bankr. D.Minn.1987). The adequacy of a debtor's books and records, however, must be gauged on a case-by-case basis, according to the special characteristics of the debtor's background, occupation, business, and personal financial structure. *In re Drenckhahn,* 77 B.R. at 707–708; *In re Hogard,* 43 B.R. 590, 594 (Bankr.D.Minn.1984).

This Court has previously noted that a debtor whose discharge is challenged under § 727(a)(3) may produce relevant financial records or account for their unavailability at any point up to trial, or at it. *In re Losinski,* 80 B.R. 464, 469 (Bankr. D.Minn.1987). This latter ruling, however, does not mean that a debtor whose discharge is challenged under § 727(a)(3) is invariably entitled to a full-dress trial. If a creditor believes that discovery has revealed that the debtor does not have adequate financial records, and is without an excuse for their nonproduction or nonexistence, the creditor may join the ultimate issue by making a preemptive summary judgment motion; given the governing substantive law, *Celotex Corp. v. Catrett* clearly authorizes such a move. The debt-

---

**6.** As the Supreme Court has held, "the determination of whether a given factual dispute requires submission to a [fact-finder] must be guided by the substantive evidentiary standards that apply to the case." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. at 2512.

The court must "bear in mind the actual quantum and quality of proof necessary ... under the applicable law." *Hartnagel v. Norman,* 953 F.2d at 396 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 254, 106 S.Ct. at 2513).

or then may successfully defend the motion by making an evidentiary foundation to establish a measure of adequacy, and then by establishing one of two alternate means to address the statute's second inquiry: producing documents which are arguably sufficient to meet that measure in nature and number; or producing probative evidence going to a good excuse for his failure to produce them. If the debtor makes a cross-motion for summary judgment, of course, the ultimate issue *may* be amenable to summary adjudication.[7]

The record here, however, is not as broad as these observations contemplate. The parties have farmed in few, if any, of the probative source documents. The unspoken, but crucial, inference from the evidence of record is that, somewhere within the "mountain of documents," in the form of some or even all of them, there is a perfectly adequate recapitulation of Defendants' financial position over the relevant period of time. Plaintiff's counsel do not acknowledge this inference; instead, they rely on their own expressions of frustration at being forced to analyze an undifferentiated mass of paper, and at the difficulty of executing that analysis in the face of Defendants' passive resistance. The frustration is entirely understandable; its root causes may be probative of the ultimate legal issue on this count. The problem is that the adverse inference is there, whether counsel likes it or not. Further, there is no record to support the linkage which Plaintiff asserts; one cannot ascertain how far Plaintiff's counsel went in their review and inquiry, as they have not described the

actual documents they reviewed in anything other than a very general fashion.

On the other hand, Defendants' counsel did little better in response, relying on a summary assertion that their clients had been able to prepare several summaries of the documents, and were "ready" to furnish any additional explanation which Plaintiff requested. The logical inference to be drawn from these broad statements is that the "mountain of documents" was, indeed, amenable to a reduction which would equate to the accounting mandated by the statute. Defendants' counsel, however, did not even advance this interpretation. Had Plaintiff's counsel made a more complete record, one might conclude that Defendants' cursory response was a mere blandishment, incapable of creating a triable fact dispute. They did not. As a result—and because a triable fact dispute is implicit in the documentary basis which Plaintiff asserts for this motion—a grant of summary judgment in Plaintiff's favor on its § 727(a)(3) theory is unwarranted.

### II. 11 U.S.C. § 727(a)(4).

Plaintiff's motion is much more involved as to its count under 11 U.S.C. § 727(a)(4). Defendants have admitted that their bankruptcy schedules were false, because they omitted at least several of Defendants' interests in business entities and real estate. Plaintiff's counsel point to a string of circumstances and events to support an inference on the key element of the statute: that Defendants knowingly intended to deceive their creditors and trustee when they verified these schedules.[8] Counsel's recita-

---

7. Counsel who try to advance the decisional process on a § 727(a)(3) objection back to the summary judgment stage may or may not find the court inclined to entertain them. If reams of documents are relevant to the inquiry, their review and evaluation is better done after a slower and more structured introduction at trial, and in conjunction with explanatory testimony by the debtor and others. As another judge of this Court has aptly noted in applying the parallel provisions of 11 U.S.C. § 727(a)(5),

Documents cannot "speak for themselves" so as to justify a bar of discharge ... Due process requires that a debtor must first be asked to explain those particular matters for which explanation is sought; and then, he

must have either refused to explain or have furnished insufficient explanation.
... The purpose of the action is to deprive discharge to a debtor who refuses to cooperate with efforts of the trustee or creditors to trace property, to locate and to recover assets of the estate. Accordingly, there can be no "documents case" which, standing alone would be sufficient to bar discharge ...
*In re Olson,* 98 B.R. 944, 953 (Bankr.D.Minn. 1988) (O'Brien, J.), *aff'd on other grounds,* 916 F.2d 481 (8th Cir.1990).

8. Under statute, this verification (a declaration of truth and correctness under penalty of perjury) has the force and effect of an oath. *See* 28 U.S.C. § 1746.

tion of the basic evidence is lengthy, detailed, and minutely documented by specific references to numerous pleadings, instruments, tax returns, financial statements, deposition testimony, and other "hard" proof. On this basis, Plaintiff asserts that Defendants cannot credibly deny the ultimate fact of fraudulent intent. As a result, Plaintiff argues, it is entitled to a judgment denying Defendants their discharge, as a matter of law. Defendants countered the motion via a 21–page responsive pleading, with a sheaf of documentary attachments approximately ¾″ thick.[9]

While the parties' briefing does not completely recognize it, Plaintiff's theory implicates an interesting wrinkle on summary judgment law and practice, one which is seldom raised and little treated in the extant caselaw.

In a motion under Rule 56, the Court's first and most significant task is to ascertain the existence of triable fact disputes. In any litigation involving complex or abstruse facts or law, the record may lack direct evidence going to the existence of one or more essential elements of a claim or defense. This is common in litigation in which a particular state of mind on the part of an actor is an essential element of a claim or defense. *See, e.g., In re Van Horne,* 823 F.2d 1285, 1287 (8th Cir.1987); *In re Miera,* 104 B.R. 989, 997 (Bankr. D.Minn.1989); *In re Johnson,* 80 B.R. 953, 958 n. 7 (Bankr.D.Minn.1987), *remanded on other grounds,* 880 F.2d 78 (8th Cir.

1989), *on remand,* 124 B.R. 290 (Bankr. D.Minn.1991); *In re Tveten,* 70 B.R. 529, 532 (Bankr.D.Minn.1987), *aff'd,* 848 F.2d 871 (8th Cir.1988). In such cases, the factfinder is inevitably relegated to making inferences on the ultimate issue, from basic facts which are in evidence. *See, e.g., In re Van Horne,* 823 F.2d at 1287; *In re Miera,* 104 B.R. at 997; *In re Erdman,* 96 B.R. 978, 985 (Bankr.D.N.D.1988); *In re Johnson,* 80 B.R. at 958 n. 7; *In re Barnacle,* 44 B.R. 50, 55 (Bankr.D.Minn.1984); *In re Pommerer,* 10 B.R. 935, 940 (Bankr. D.Minn.1981). An inference, of course, is a fact or proposition which is deduced as a logical consequence from other facts which are already proved or admitted. BLACK'S LAW DICTIONARY at 778 (6th ed.1990); *Computer Identics Corp. v. Southern Pacific Co.,* 756 F.2d 200, 204 (1st Cir.1985). *See also Esteban v. Central Mo. State College,* 415 F.2d 1077, 1085 (8th Cir.1969), *cert. den.,* 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970).

It is one of the time-worn verities of summary judgment theory that a motion under Rule 56 must be denied if the parties can disagree in good faith on material subjective inferences going to essential elements of the claim or defense in question, even where the basic facts presented on the motion are not in dispute. *White Motor Co. v. United States,* 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); *Pfizer, Inc. v. Internat'l Rectifier Corp.,* 538 F.2d 180, 184 (8th Cir.1976), *cert. den.,* 429 U.S. 1040,

**9.** Defendants' counsel cast their clients' response as a unitary pleading which combined a summary of procedural history, a recitation of long-term historical facts (arguably irrelevant) on the parties' lender-borrower relationship, and 13 pages of "discussion" intermingling brief fact assertions, references to documentary attachments, legal argument, and case citations. Many of these documents are fragmentary, or third-party hearsay; nowhere in their Response do Defendants formally lay a foundation for any of them. This scarcely satisfies the requirement that the evidence presented on summary judgment motions be *admissible. See, e.g., Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552; *Hartnagel v. Norman,* 953 F.2d at 396. Appended to all this are photocopies of facsimile-transmitted pages bearing Defendants' signature, in which they purport to verify the entire "Response." This form of response was accept-

able under prior practice in this Court. *See* former LOC.R.BANKR.P. (D.MINN.) 106(d) and 107(b). It is no longer, and was not for the present motion; new LOC.R.BANKR.P. (D.MINN.) 1202(b), effective August 1, 1991, requires the service and filing, "if facts are at issue, [of] an opposing affidavit." The matter at hand underlines the prudence of the change. The ascertaining of fact issues on summary judgment should be a methodical process, involving a point-by-point and line-by-line comparison of proffered evidence on competing fact issues. Where fact allegations are set out accessibly in regular, numbered paragraphs in an affidavit, this can be a fairly perfunctory task. Where, as here, they are interspersed (and sometimes even melded) with "lawyer talk," the job is much more difficult and time-consuming—and unnecessarily so.

97 S.Ct. 738, 50 L.Ed.2d 751 (1977). As companion propositions, the courts have noted repeatedly that all evidence presented on the motion must be viewed in the light most favorable to the party opposing the motion, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), and *Snell v. United States,* 680 F.2d 545, 547 (8th Cir.1982), *cert. den.,* 459 U.S. 989, 103 S.Ct. 344, 74 L.Ed.2d 384 (1982); and that the opposing party must be conceded all reasonable factual inferences, without an assessment of credibility, *e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1608–1609, 26 L.Ed.2d 142 (1970); *Hartford Acc. & Indem. Co. v. Staufer Chemical Co.,* 741 F.2d 1142, 1144–1145 (8th Cir. 1984); *Vacura v. Plott,* 666 F.2d 1200, 1203 (8th Cir.1981); *Vette Co. v. Aetna Cas. & Sur. Co.,* 612 F.2d 1076, 1077 (8th Cir. 1980); *Watts v. Brewer,* 588 F.2d 646, 648 (8th Cir.1978).

■■■ These maxims are directly implicated in the motion at bar; their application is the key to this motion, as it relates to the § 727(a)(4) count. For a debtor to be denied discharge under this statute, the complaining creditor must prove that the debtor made a false oath in connection with his bankruptcy case. A misrepresentation in the debtor's bankruptcy schedules, as to the identity or value of his assets, is a "false oath" for the purposes of this provision. *In re Calder,* 907 F.2d 953, 955 (10th Cir.1990); *In re Chalik,* 748 F.2d 616, 618 n. 1 (11th Cir.1984); *Farmers Co-operative Assn' v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982); *In re Graham,* 111 B.R. 801, 806 (Bankr.E.D.Ark.1990); *In re Hogard,* 43 B.R. at 595. To merit denial of discharge, however, the misrepresentation must be material. *Mertz v. Rott,* 955 F.2d 596, 597 (8th Cir.1992); *In re Olson,* 916 F.2d at 484. Contrary to Defendants' argument, however, this materiality element cannot turn on the value of the asset(s) in question; the value of omitted assets, while not irrelevant, is not determinative. *In re Olson,* 916 F.2d at 484. The real question is whether the omitted or falsely-represented asset

"bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."

*Mertz v. Rott,* 955 F.2d at 598, and *In re Olson,* 916 F.2d at 484 (both quoting *In re Chalik,* 748 F.2d at 618).

■■■ Plaintiff has satisfied this element of § 727(a)(4): Defendants have admitted that they held significant ownership interests in 1985–3 Partnership and 409 Van Dyke Limited Partnership, and Hemmingway Heights Limited Partnership, and failed to make entries for them in either their original or amended B–Schedules.[10]

**10.** Plaintiff also argues that Defendants omitted Mathern's ownership interests in the J.A. companies and in an entity called Mathern–Johnson, Inc., from their schedules, claiming that the legal, equitable, or *"de .facto"* nature of these interests was manifested by Mathern's intense involvement and dense financial intertwinings with them. Defendants deny at length that either of them held any legal or equitable interests in any of these companies. They state that, at all times up to and after the bankruptcy filing, Johnson owned these companies in full, and that Mathern and Johnson never consummated their executory "understandings" that Johnson would transfer a significant shareholding in them to Mathern. They point to Johnson's consistent testimony to this effect, in deposition and in a copy of an affidavit, as well as a stock certificate from the corporate books of JADI, evidencing Johnson's ownership of 100 shares and alleged to be the only outstanding stock certificate for that entity. Even putting its blatant self-interestedness aside, this all flies in the face of Johnson's and Mathern's numerous written representations to creditors and taxing authorities over several years preceding the bankruptcy filing, in which they alleged that Mathern was a part owner of these entities. This sharp contradiction halts summary judgment analysis on this count, as to these alleged property interests; it evidences a genuine issue of material fact. To equal result, the record evidences a triable fact dispute as to the Monroe Street properties. Defendants' proof suggests that they misidentified the properties by street address in their schedules, but that they did not *omit* any realty in Columbia Heights in which they held interests. Plaintiff's proof is strongly to the contrary; at the very least, it justifiably points to the confusion created by the way in which Mathern developed, sold, and maintained records for these properties. With a record in this state, further evidentiary development on the basic question of ownership is warranted before any defensible adjudication is possible.

Their protestation that these unscheduled interests had no "net value" is unavailing.[11] Just as the Eighth Circuit concluded for the debtors in *Mertz* and *Olson,* the omitted assets—particularly 1985–3 Partnership—were related, "and in a substantial way," to John Mathern's business transactions and to the extent of Defendants' bankruptcy estate. Even if the subject assets were of "questionable" value like those in *Olson,* this satisfies the materiality element.[12] 916 F.2d at 484.[13]

■ The other two elements of § 727(a)(4) are subjective in nature: the complaining creditor must demonstrate that the debtor knew of the true state of affairs, and that he fraudulently failed to disclose it while under oath. Defendants have admitted the *scienter* element, at least as to Mathern's interests in the 1985–3, 409 Van Dyke, and Hemmingway Heights partnerships. *See* Defendants' Answer at para. 4 (admitting "their inadvertant [sic] failure to list interests in 1985–3 Partnership, Inc., 409 Van Dyke Limited Partnership and Hemmingway Heights Limited Partnership, which are of no monetary value"); and Defendants' Response to Plaintiff's Motion for Summary Judgment, at 11.

■ The remaining, and crucial, issue is the element of intent. The fraudulent state of mind contemplated by § 727(a)(4) is an intent to mislead the court and the debtor's creditors. *In re Olson,* 916 F.2d at 484. It is in the divination of this element that the propriety of an inferential process in a summary judgment procedure is implicated. Plaintiff has mustered a body of circumstantial evidence gleaned from its discovery efforts, and urges that that evidence is amenable to only one reasonable inference: Defendants intended to deceive other parties to their case when they omitted significant assets from their schedules. In their verified response, on the other hand, Defendants cite certain consistent deposition testimony by Mathern and Johnson that Mathern "had little knowledge of the financial dealings of the J.A. entities and the … partnerships," and then state:

> … the record [does not] demonstrate that [Mathern] had more than a passing familiarity with [the] existence and operation [of the partnerships]. Therefore, it is entirely probable that circumstantial evidence could be interpreted to indicate … Mathern's honest omission of this asset.

Defendant's Response at 12–13. As coy and complicated as the wording of this statement is, it cannot be read as an outright denial of the ultimate fact.[14] Plaintiff has not adduced any evidence to counter Defendants' circumstantial evidence, however. The gist of Defendants' argument is that their aggregation of circum-

Were these three groups of assets the only ones in question, the analysis would stop here and Plaintiff would be put to its burden under Fᴇᴅ. R.Bᴀɴᴋʀ.P. 4005 as to the threshold issue, at trial.

11. Plaintiff has rebutted the assertion, in any event. Though there apparently was no more than 200–odd dollars on deposit in the 1985–3 Partnership account when Defendants filed for bankruptcy, Defendants have not rebutted Plaintiff's evidence that some $20,000.00 passed through the account shortly *after* they filed. Whatever their source and nature, these funds suggest that the entity retained valuable rights, under contract or in liquid form.

12. Plaintiff's counsel went to great lengths to recapitulate evidence indicating a substantial value for 1985–3 Partnership. Unfortunately, but necessarily, this conclusion renders that effort nugatory—at least for now, or at least for the purposes of this adversary proceeding.

13. In *Mertz,* the Eighth Circuit held that an omission of assets was material even if they were arguably exemptible under applicable state law to the full extent of their value. *Mertz's* holding, then, goes even more beyond *Olson.* These decisions ever more strongly identify the gist of a sustained § 727(a)(4) objection as a punitive measure, to ensure debtors' exhaustive compliance with disclosure requirements as the price for their bankruptcy relief.

14. In large part, it is legal argument rather than evidence under oath going to a fact issue. It is not easy to break out the two very different components of this statement, and the need to do so made the present analysis all the more difficult. Again, this highlights the reason why the judges of this Court changed the local rules which govern the form of responses to motions. *See* n. 9 *supra.*

stantial evidence, regardless of whether Mathern has made a direct denial or not, raises another reasonable inference. That, of course, is that the omission was "inadvertent," negligent at worst. If this argument is correct, the Court would have to deny Plaintiff's motion.

When presented with two alternative inferences urged from the same body of basic fact, the Court's errand is obvious: to identify whether only one or both of them are reasonable. This is the seldom-discussed aspect of summary judgment theory mentioned earlier. In one of the very few reported cases framing and treating the issue, the Ninth Circuit pointedly noted that

> [a] party opposing summary judgment is entitled to the benefit of only *reasonable* inferences that may be drawn from the evidence put forth.

*Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 680 (9th Cir.1985) (emphasis in original). *See also Mutual Fund Investors, Inc. v. Putnam Mgmt. Co.*, 553 F.2d 620, 624–625 (9th Cir.1977). A reasonable inference is one which supports a viable legal theory. *Barnes v. Arden Mayfair, Inc.*, 759 F.2d at 680; *Mutual Fund Investors, Inc. v. Putnam Mgmt. Co.*, 553 F.2d at 624.[15] By necessary implication,[16] a reasonable inference cannot be supported by "only threadbare conclusory statements instead of 'significant probative evidence.' " *Barnes v. Arden Mayfair, Inc.*, 759 F.2d at 680–681 (quoting *Mutual Fund Investors, Inc. v. Putnam Mgmt. Co.*, 553 F.2d at 625.)

In passing on the reasonableness of competing inferences asserted on the same basic evidence, the trial court is only to determine the adequacy of the evidentiary foundation for the inference. *Barnes v. Arden Mayfair, Inc.*, 759 F.2d at 681. It is not to weigh the inferences against one another, *id.*, which is the function of the finder of fact if the inferences are adequately supported, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511 ("the drawing of legitimate inferences from the facts" is function of finder of fact). If, however, the movant has produced "overwhelming" basic evidence to support its asserted inference, and the respondent has failed to produce significantly probative evidence countering the inference, it may be unreasonable to draw an inference contrary to the movant's interpretation of the facts. *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. at 285–286, 88 S.Ct. at 1590–1591; *Barnes v. Arden Mayfair, Inc.*, 759 F.2d at 681. In such a case, a grant of summary judgment would be appropriate even though subjective factors such as motive or intent are the fact issue in question. *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. at 279, 88 S.Ct. at 1587–88; *Barnes v. Arden Mayfair, Inc.*, 759 F.2d at 681; *In re George's Comet Motorcars, Inc.*, 100 B.R. 403, 405–406 (Bankr.N.D.Ill.1989).

These principles, then, fall nicely into order on the proverbial seamless web. For summary judgment purposes, the reasonableness of asserted fact inferences is

---

**15.** This proposition seems to be a reformulation of the materiality requirement under Rule 56. Obviously, the ultimate fact derived via the process of inference must go to an element of the claim or defense which is at issue, if it is to support a legal theory. Under Rule 56, a fact asserted to be in controversy is material if the outcome of the claim or defense would turn on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510; *Hartnagel v. Norman*, 953 F.2d at 395; *Kraemer v. Univ. of Minnesota*, 752. F.Supp. 283, 285 (D.Minn.1990).

**16.** This implication seems to arise not only out of the basic concept of "reasonableness," but also from the procedural context in which the concept is to be applied. A respondent to a motion for summary judgment who asserts the

existence of a genuine issue as to the ultimate fact must produce significant probative evidence supporting its version of the fact at issue. *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990); *Osborn v. E.F. Hutton & Co.*, 853 F.2d 616, 618 (8th Cir.1988); *In re Kostecky*, 111 B.R. 823, 827 (Bankr.D.Minn.1990). Evidence which is "merely colorable," or which is "not significantly probative," is not enough. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–250, 106 S.Ct. at 2510–2511; *Krause v. Perryman*, 827 F.2d 346, 350 (8th Cir.1987). This being the general rule for measuring direct proof going to facts in controversy in summary judgment, it is appropriately applied to the more fine-tuned function of gauging the reasonableness of abstracted fact inferences.

not an abstract concept, pondered by the reviewing court in a vacuum; rather, it turns on the weight and probity of the evidence argued in support of the inferences. Ultimately, the inquiry is the same, whether it goes to basic supporting facts or to the ultimate fact to be inferred: could reasonable minds differ as to the factual interpretation of the evidence of record? *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–252, 106 S.Ct. at 2511–2512 (noting that standard for weighing of evidence under Rule 56 mirrors that for motion for directed verdict under Rule 50(a)).

■ The basic evidence which Plaintiff asserts in support of an inference of fraudulent intent on Defendants' part is all circumstantial, but in its entirety it is substantial. As to John Mathern, Plaintiff points to numerous circumstances and factors to argue that he was fully aware of his duty to schedule the omitted assets, but intended to deceive other parties to his case by omitting them:

1. As a businessman, Mathern had had positions of considerable responsibility and involvement in financial planning, investments, and construction contracting for over ten years. As evidenced by the magnitude of Mathern's income from it, this activity required some degree of intelligence and sophistication on Mathern's part.

2. During the partnership syndications in the mid–1980s, Mathern became acquainted with legal and accounting technicalities, and the need to preserve and provide accurate information on the partnerships' operations and his interests in them to taxing and other governmental authorities.

3. For a period of years, Mathern and Johnson used 1985–3 Partnership as their major vehicle for the funnelling of cash among the components of their business structure. 1985–3 Partnership was the major source of their own personal income, as derived originally from all of their joint projects. For the several years preceding their bankruptcy filing, Defendants received nearly all of their family income from 1985–3 Partnership.

4. Mathern has acknowledged his unqualified ownership interest in 1985–3 Partnership, and the fact that he held this interest when Defendants filed for bankruptcy.[17]

5. Defendants themselves prepared and filed their personal income tax returns for the years immediately preceding their bankruptcy filing. All of these returns were complicated. In them, Defendants scheduled the several sources of their family income and took numerous, detailed deductions from their various business activities, including John Mathern's real estate-related businesses and Sandra Mathern's horse grooming and breeding activity. For the years 1986 through 1989, they used these deductions to lower their joint taxable income to the point of showing losses for tax purposes for every year. This resulted in no income tax liability for them. This evidences Defendants' ability to understand complex forms involving technical legal concepts, and their awareness of the importance of the information which such forms required.

6. On these tax returns, Mathern scheduled substantial income which he received from 1985–3 Partnership for the several years immediately preceding Defendants' bankruptcy filing, as well as his personal ownership interest in the entity.

7. Debtors included the debt attributable to 4663 Monroe Street on their A Schedules. This circumstance, and the general one of the length and detail of the entries on the debt schedules, evidence Mathern's awareness of the importance of accurate notations on his bankruptcy schedules.

8. Mathern failed to amend his asset schedules to include the omitted as-

---

**17.** The fact that he now pleads "confusion ... as to exactly what is 1985–3 Partnership," Defendants' Response at 11, does not change the fact that he knew he had some interest in it, whatever it was.

sets, even after Plaintiff's counsel confronted him with evidence of his ownership of them and he admitted the same.

As to Sandra Mathern, Plaintiff points to her execution of Defendants' income tax returns, as well as other factors:

1. She ran her own horse-grooming business for several years, including 1986 and 1987. The entries on the separate schedule for this business to Defendants' income tax returns evidenced her ability to carefully calculate and note all of the expenses of the business, as well as the alleged lack of any net cash income for it for those years.[18]

2. She kept the family checkbook, paying household obligations out of it. Though she was evasive when asked to provide detail in her deposition testimony, her answers make it clear that she had the major responsibility for the input and outflow of funds from this account.

3. She was fully aware of, and involved in, other aspects of Defendants' family finances and knew the nature of their assets. This is evidenced by her knowledge that John Mathern maintained cash in a safety deposit box, and used that cash and other funds to substantially pay down Defendants' homestead mortgage before their bankruptcy filing.

Emphasizing these facts, and pointing to the intelligence, awareness, and sophistication evidenced by the content of their bankruptcy schedules, tax returns, and testimony in deposition, Plaintiff argues that one can make only one inference from Defen-

dants' failure to schedule major assets, including the source of virtually all of their household income: that they did so with the intent to prevent the Trustee and creditors from learning of the existence of those assets and their importance in Defendants' financial structure.

In their verified response, Defendants do not even formally deny that they acted fraudulently in failing to schedule the omitted assets.[19] They only point to a number of factors and circumstances which, they allege, could support an inference on their intent which is contrary to the one which Plaintiff urges:

1. In their depositions, both Mathern and Johnson testified that Mathern was not involved in the day-to-day activities of JADI or the other J.A. entities, and had "little knowledge" of them or any of the numerous limited partnerships.

2. In his deposition, Mathern professed to be confused about the precise nature of 1985–3 Partnership, and was unsure whether more than one legal entity bore this appellation.

3. The low-income housing project which Mathern and Johnson developed under the auspices of 409 Van Dyke Limited Partnership had loan guarantees afforded to it by the Minnesota Housing Finance Agency. At the direction of that guarantor, the partnership's organizing agreement contained a provision by which the partnership would purport to terminate the interest of any general partner, including Mathern, were that partner to file for bankruptcy. Mathern now professes to have believed at the time of Defen-

---

**18.** These circumstances resulted in Defendants' use of this activity as a device to shelter other income not related to it.

**19.** They did make this assertion, in so many words, several times in their answer to Plaintiff's complaint. These statements, however, are irrelevant to the matter at bar:

When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits, or as otherwise provided in [Rule

56], must set forth specific facts showing that there is a genuine issue for trial.

FED.R.CIV.P. 56(e), *as incorporated by* FED. R.BANKR.P. 7056. Of course, a bald denial in response, with nothing more, would not have helped Defendants anyway. *The Prudential Ins. Co. of America v. Whitney*, 954 F.2d at 519; *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir. 1984), *cert. den.*, 469 U.S. 841, 105 S.Ct. 145, 83 L.Ed.2d 84 (1984) (conclusory assertions of ultimate fact are accorded little weight in determination of genuine issue of material fact).

dants' bankruptcy filing that he had no interest in the partnership, as a result of the operation of this provision.

4. Defendants disclosed the pre-petition paydown of their homestead mortgage debt in their bankruptcy schedules.

5. The entry on their asset schedules for properties on Monroe Street in Columbia Heights "incorrectly listed" the street address of those properties in which they held an interest under a contract or contracts for deed.

6. After they defaulted on payment obligations to Plaintiff in 1987–88, Mathern and Johnson continued to collect rental revenues from the properties mortgaged to Plaintiff, and held these funds on deposit until their settlement negotiations with Plaintiff broke down in 1988–89. These actions, Defendants allege, evidence "candor," and not "concealment."

These are the only fact allegations which Defendants identify in their verified response as evidence which tends to defeat the inference which Plaintiff proffers.[20] Defendants make a lengthy argument of law, however, that their own proffer merits a denial of Plaintiff's motion and entitles them to a full-dress evidentiary development of the intent issue at trial.

Plaintiff's evidence on the intent element fully supports an inference that, in executing and filing their bankruptcy schedules, Defendants intended to conceal the existence of the omitted assets from the trustee and their creditors, to whatever effect. Defendants cannot deny their past experience in handling large sums of money, often in complicated sequential transactions, whether it was in John Mathern's construction and development business or in the maintenance of their household finances. Like any middle-class people in modern commercial society, they knew that many commercial, business, and legal matters re-

quire involved disclosure of personal financial information; their tax returns alone support this inference. This experiential backdrop fully supports the next inference: that they understood the nature of the disclosures which were incumbent on them in their bankruptcy filing. The detail of the partial disclosure which they did make further buttresses the latter inference; they were able to muster fairly detailed information on the debts and assets of the partnerships which they did disclose.

Mathern has admitted his ownership interest in the omitted assets, and has as much as admitted that he knew of that interest at all relevant times. The same knowledge, albeit not always the same legal status as owner, is fairly inferred for Sandra Mathern. Their common intent to hide the ownership interests during their bankruptcy case is manifested by all of the circumstances attendant to the filing, including the fact that they scheduled only some of their partnership and real estate interests, and the fact that they omitted the single asset which had been most beneficial to them in the past. Perhaps more strongly than anything, fraudulent intent is evidenced by their failure to amend their schedules to include the omitted assets after the filing, even as they were acknowledging and taking the benefit of that ownership in their 1990 income tax returns, and in the face of Plaintiff's counsel's repeated actions to bring the omissions to their attention. As Plaintiff's counsel appropriately quotes,

> A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath.

*In re Tully,* 818 F.2d 106, 111 (1st Cir. 1987). Standing alone, this evidence would

---

**20.** As *lagniappe,* Defendants' counsel stated in oral argument that their decision to file for bankruptcy had been "stressful," and that this had had some effect on how they completed their schedules. This statement, of course, is not evidence. The calculated procedure by which Defendants substantially reduced their homestead mortgage just before filing suggests

the opposite. Finally, regardless of what some institutional creditors and their legislative lobbyists may plead, a debtor's decision to confess financial failure by filing for bankruptcy is rarely *not* stressful. Defendants labored under no greater burden than anyone else similarly-situated, and should be no less accountable.

meet the intent element of § 727(a)(4)(A). *Mertz v. Rott,* 955 F.2d at 598.

None of the factual points with which Defendants respond is sufficient to support their asserted inference of "inadvertence" or lapse of memory while formulating their schedules. Mathern's "confusion" as to the nature of 1985–3 Partnership is laughable. To the extent this summary, self-serving disclaimer is even credible, it is irrelevant; having manipulated this entity in the past, and having enjoyed great financial benefit from it, his confusion as to the legal niceties of its form or consequence has no bearing on his legal duty to disclose the basic fact of its existence. Neither does his alleged lack of direct involvement in the financial management or accounting for the J.A. companies, or any of the limited partnerships; a tawdry disclaimer of knowledge of their operations cannot obscure the tacit admissions in his income tax returns that he knew he held interests in the omitted partnerships, whatever their nature. Finally, though evidence as to Mathern's and Johnson's handling of the 1985–3 Partnership account arguably bears on Mathern's contemporaneous state of mind *vis-a-vis* Plaintiff, it has nothing to do with his intent in the acts or omissions which are relevant to this discharge objection. To the extent that it does, it ultimately cuts against the inference which Defendants assert; in its signal act—the dissipation of the revenues before Plaintiff could levy upon the account—it evidences a furtive and predatory motivation, rather than the "candid" one which Defendants plead.

None of the events or circumstances which Defendants advance as support for their proffered inference supports a viable legal theory, as they do not go to the specific fact issue in controversy. In any event, they do not amount to significant probative evidence, and are not sufficient to defeat the inference of fraudulent intent which Plaintiff asserts. None of these conclusions requires an assessment of credibility. Plaintiff, then, has the benefit of its asserted inference. This means it has satisfied the intent element of § 727(a)(4)(A), even in the face of Defendants' resistance. *See In re Sapru,* 127 B.R. 306, 316–317 (Bankr.E.D.N.Y.1991), and *In re Braun,* 98 B.R. 382, 384–385 (Bankr.N.D.Ill.1989) (both concluding that debtor failed to produce evidence of sufficient strength to rebut objector's *prima facie* case on fraudulent intent under § 727(a)(4)(A), and both granting summary judgment denying discharge). Plaintiff, then, is entitled to summary judgment on its count under § 727(a)(4)(A).

### 11 U.S.C. § 727(a)(2).

■ At least for the purposes of this motion, Plaintiff relies on the same factual basis for its count under 11 U.S.C. § 727(a)(2) as it did for its count under § 727(a)(4). Facts meriting a denial of discharge under § 727(a)(4) may be sufficient to merit the same relief under § 727(a)(2). *In re Olson,* 98 B.R. at 954, n. 16. Obviously, the rationale for this conclusion is that a debtor's intentional omission of assets from his bankruptcy schedules amounts to a concealment of property with intent to hinder, delay, or defraud his trustee or creditors, both pre- and post-petition. While the operative act is the same under both theories, under § 727(a)(2) the complaining creditor has more options for satisfying the intent element. Arguably, to "hinder," under its dictionary definition as "to delay, impede, or prevent action," and to "delay," under its dictionary definition as "to stop, detain, or hinder for a time," are distinguishable from the deceptive act denoted by the verb "to defraud"; given the disjunctive phrasing of the statute, proof of any of the three should be sufficient. *In re Johnson,* 80 B.R. at 959.[21] *Accord, In re Tarle,* 87 B.R. 376, 378 (Bankr.W.D.Pa.1988).

■ In the record for this motion, Plaintiff has made a *prima facie* case meeting the requirements of § 727(a)(2)(A),

**21.** On remand, this Court observed that the Eighth Circuit's opinion left it unclear whether the statute's grammatically-drawn distinction was anything more than semantic. There is, however, every reason to conclude that the distinction has substantive import. *In re Johnson,* 124 B.R. at 295, n. 9.

at least as to Defendants' failure to schedule their interests in 1985–3 Partnership and Hemmingway Heights Limited Partnership. Their failure to list these property interests, during the pre-petition preparation of the schedules and at the time of their formal submission to the Court, was a concealment of those interests within the meaning of the statute. *In re Sofro,* 110 B.R. 989, 991 (Bankr.S.D.Fla.1990); *In re Lunday,* 100 B.R. 502, 507–508 (Bankr. D.N.D.1989); *In re Krich,* 97 B.R. 919, 923 (Bankr.N.D.Ill.1988); *In re Kessler,* 51 B.R. 895, 898 (Bankr.D.Kan.1985); *In re McDonald,* 16 B.R. 621, 622 (Bankr. S.D.Fla.1981); *In re Kapsos,* 16 B.R. 280, 282 (Bankr.S.D.Fla.1981). To this day, they have failed to remedy the omission by an amendment to the schedules; this compounds the concealment. *In re Sofro,* 110 B.R. at 991; *In re Alfonso,* 94 B.R. 777, 778 (Bankr.S.D.Fla.1988); *In re Krich,* 97 B.R. at 923. *Cf. Mertz v. Rott,* 955 F.2d at 598 (failure to include additional, previously-undisclosed assets on amended schedules, and to further amend in order to list them, compounds debtor's "false oath" for purposes of § 727(a)(4)(A).). Under the same process of inference applied to the § 727(a)(4) count, the basic evidence going to their knowledge and intent readily establishes any of the three varieties of intent proscribed by § 727(a)(2). The weak circumstantial evidence which Defendants proffer in rebuttal serves them no better on this count than it did under the other one. Defendants intended to hinder, delay, and defraud other parties to this case when they filed materially incomplete schedules and did not amend them when requested. On this portion of the factual basis for its § 727(a)(2) count, then, Plaintiff is equally entitled to summary judgment.[22]

## ORDER FOR JUDGMENT

Based upon the findings of fact and conclusions of law contained in this memorandum order, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1. That Plaintiff's motion for summary judgment on its count under 11 U.S.C. § 727(a)(3) is denied.

2. That Plaintiff's motion for summary judgment on its count under 11 U.S.C. § 727(a)(2)(B) is denied.

3. That, pursuant to 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(4)(A), Defendants are denied a discharge in bankruptcy.

LET JUDGMENT BE ENTERED IN ACCORDANCE WITH TERM 3 OF THIS ORDER.

---

**22.** Plaintiff also pleaded and argued an entitlement to relief under § 727(a)(2)(B), based on an allegation that Mathern had transferred his general partner's interest in 409 Van Dyke Limited Partnership *after* the bankruptcy filing. The request for relief under this theory is not amenable to summary adjudication on the present record. There is no dispute that the records of this partnership were changed after the bankruptcy filing, to eliminate Mathern's general partner's interest. The evidence of record raises a substantial fact question as to whether Defendants were the parties who effected the alleged transfer, or whether they were even aware of it. To equal effect, the record raises a question of law as to whether the transfer was legally effected; the *ipso facto* clause which purportedly compelled it was probably unenforceable against the bankruptcy estate. 11 U.S.C. § 541(c)(1) provides, in pertinent part,

(c)(1) Except as provided in [11 U.S.C. § 541(c)(2)], an interest of the debtor in property becomes property of the estate under [11 U.S.C. § 541](a)(1), (a)(2), or (a)(5) ... notwithstanding any provision in an agreement, transfer instrument, or applicable non-bankruptcy law—

\* \* \* \* \* \*

(B) that is conditioned on the insolvency or financial condition of the debtor, [or] on the commencement of a case under [the Bankruptcy Code] ... and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

Were this alleged transfer the sole ground asserted for the § 727(a)(2) count, summary judgment would be untenable. It is not, and there are independent grounds for judgment under the same count; as a result, the issue is moot.