[No. 52221-9. En Banc. June 26, 1986.]

FRANCES TEMPLETON, *Respondent*, v. PEOPLES NATIONAL BANK OF WASHINGTON, *Appellant*.

*Short & Cressman,* by *John O. Burgess,* for appellant.

*Robert W. McKisson* (of *McKisson & Sargent, Inc., P.S.*), for respondent.

GOODLOE, J.—The appellant, Peoples National Bank of Washington is the trustee of a trust established by Dr. Frederic Templeton, now deceased. The respondent, Frances Templeton, is Dr. Templeton's surviving spouse and the income beneficiary of the decedent's trust. In 1936, Dr. Templeton contracted for a retirement fund with Teachers Insurance and Annuity Association (TIAA) and in

1954 he contracted with College Retirement Equities Fund (CREF). Dr. Templeton contracted to make contributions and to have his employer make contributions to these annuity funds in exchange for the guaranty that, upon retirement, he would receive monthly payments from these funds for a selected period of time. The terms of the these contracts allowed Dr. Templeton to designate a beneficiary of the annual annuity payments. Dr. Templeton originally named his first wife as beneficiary of TIAA and CREF. He had two children from his first marriage, and they were named as contingent beneficiaries of CREF.

After his first wife's death in 1972, Dr. Templeton executed a Living Trust Agreement appointing the Bank as trustee. As trustor, Dr. Templeton gave the Bank power to "[d]etermine what is principal or income, which authority shall specifically include the right to make any adjustments between principal and income for premiums, discounts, depreciation or depletion". Exhibit 1. Various stocks and bonds were placed in the trust at this time.

In May 1975, Dr. Templeton remarried. In July 1975, Dr. Templeton changed the beneficiary designation of his TIAA/CREF annuities to his estate and elected to receive his monthly annuity payments for a period of 10 years. In August 1975, Dr. Templeton retired and began receiving monthly payments from the TIAA/CREF retirement fund. In December 1975, he executed an Amendment to Living Trust Agreement to provide that all income from the trust be paid to Mrs. Templeton during her lifetime. After her death, the trust principal and assets were designated to pass to Dr. Templeton's two children.

In February 1976, Dr. Templeton changed the beneficiary designation of both the TIAA and CREF annuities from the estate to the Bank as trustee under the trust agreement. In June 1979, Dr. Templeton executed a will stating: "I have made provision for my wife . . . by directing that certain funds payable from [the retirement plans] be paid directly to her in the event of my death." Exhibit 4. In August 1980, Dr. Templeton died. After his death annuity

payments from TIAA/CREF were paid to the trust and managed by the Bank as trustee. The Bank allocated the major portion of the annuity payments to "principal" and distributed the balance as "income" to Mrs. Templeton. In a 39–month period the Bank received TIAA/CREF annuity payments of $81,760.64, of which $19,322.94 was credited to income payable to Mrs. Templeton.

The dispute in this case is over the proper allocation of the TIAA/CREF annuity payments. Mrs. Templeton filed a Complaint for Declaratory Judgment asking that all the payments from TIAA/CREF be designated as income under the terms of the trust and distributed to her as such. The matter was tried in King County Superior Court. The trial court found that there was an ambiguity in the documents presented in evidence, particularly in view of Dr. Templeton's will. After reviewing additional evidence, the court determined it was Dr. Templeton's intent that the TIAA/CREF annuity payments pass through the trust and be paid in full to Mrs. Templeton. The Bank appealed to the Court of Appeals, and the Court of Appeals transferred the case to this court for disposition.

The issue to be decided is whether the trial court erred when it determined that Dr. Templeton's trust was ambiguous, and consequently determined on the basis of extrinsic evidence that Dr. Templeton intended for his wife to receive his retirement annuities in toto after his death. The Bank contends that Dr. Templeton explicitly gave it, as trustee, clear discretion to determine which funds in the trust are income and which funds are principal. As trustee, the Bank argues that of the $81,760.64 it received in a 39–month period in TIAA/CREF annuities, it properly exercised its discretion by allocating only $19,322.94 to income for disbursement to Mrs. Templeton. The 1972 trust agreement provision in controversy states:

ARTICLE IV
AUTHORITY GRANTED TRUSTEE
In addition to the authority otherwise given by law, the Trustee shall have the power and the exercise of dis-

cretion in the application thereof, to:

1. Determine what is principal or income, which authority shall specifically include the right to make any adjustments between principal and income for premiums, discounts, depreciation, or depletion; . . .

Exhibit 1. The 1975 amendment to the trust reads, in part:

ARTICLE III

Section Four

Upon the death of the Trustor, the Trustee shall distribute the *income* from the said Trust to FRANCES TEMPLETON, wife of the Trustor, as long as she shall live. Upon the death of said FRANCES TEMPLETON the principal and assets of said Trust shall be distributed equally to [the two children from a first marriage].

(Italics ours.) Exhibit 2.

At the outset of proceedings the trial court reviewed four documents initially presented in evidence: (1) the trust agreement; (2) the amendment to the trust agreement; (3) Dr. Templeton's last will; and (4) the beneficiary designations under the TIAA and CREF contracts. In essence, the court concluded on the basis of these four documents: (1) that an ambiguity in Dr. Templeton's testamentary plan existed, and (2) that the ambiguity could be resolved by reference to extrinsic evidence.

The Bank contends that the four corners of the trust document alone provide adequate evidence of Dr. Templeton's testamentary intent with respect to post–death distribution of TIAA/CREF annuities. Consequently, it opposes the trial court's admission of extrinsic evidence, including the will, for the purposes of ascertaining Dr. Templeton's trust intent and further contends that the trial court erred in finding that the trust document itself was ambiguous. We agree. Although the court declared the trust document ambiguous, it apparently did so only after or in concurrence with its examination of extrinsic evidence, *i.e.,* Dr. Templeton's will. Furthermore, the trial court failed to point out the exact language in the trust document that it believed was unclear.

■ We follow the approach as set forth in *Old Nat'l*

*Bank & Union Trust Co. v. Hughes,* 16 Wn.2d 584, 587 134 P.2d 63 (1943), which states: "Primarily, [the trustor's] intent and purpose must be derived from the terms of the instrument—construing all the provisions together." (Citation omitted.) For additional guidance, we look to 90 C.J.S. *Trusts* § 161, at 18–19 (1955), which provides a persuasive summation of the rules adopted by other jurisdictions in matters of trust construction.

> Where the meaning of an instrument evidencing a trust is unambiguous, the instrument is not one requiring judicial construction or interpretation; if the intention may be gathered from its language without reference to rules of construction, there is no occasion to use such rules, and the actual intent may not be changed by construction.

(Footnotes omitted.) In view of these rules, the trial court first should have examined the trust document and its amendment alone. Only if those documents evidenced an ambiguity should the court have examined further evidence, such as the will, to resolve the ambiguity. The court erred when by its own admission it worked "backwards". It should not have reviewed at the outset other evidence along with the trust documents to determine whether the trust was ambiguous.

We find Dr. Templeton's trust, viewed by itself, is written clearly and explicitly. That the trustor chose to include the trust provision entitled "Article IV Authority Granted Trustee" suggests only one conclusion: Dr. Templeton intended to convey to the Bank the power to exercise its own judgment in allocating trust receipts to principal and income. Consequently, the trial court should not have admitted extrinsic evidence to determine Dr. Templeton's trust intent since such intent can be derived solely from the four corners of the trust document.

Furthermore, where discretion is conferred upon a trustee with respect to carrying out the provisions of a trust, the exercise thereof is not subject to control by the court except to prevent an abuse of such discretion. *Peoples Nat'l*

*Bank v. Jarvis*, 58 Wn.2d 627, 630, 364 P.2d 436 (1961). We find no evidence to conclude that the Bank abused its discretion while exercising its power to allocate trust receipts between income and principal. The Bank established as the value of principal of the two annuity funds the date–of–death values given to the trustee by TIAA/CREF. The Bank then proceeded to allocate certain sums to income and certain sums to principal based upon the value of the principal in the trust and the rate of return on that principal. The trial court acknowledged that the procedures followed by the Bank evidence no abuse of discretion. Therefore, upon review of the record, we find no reason to disturb the decision of the Bank whereby it allocated trust receipts to both principal and income.

Mrs. Templeton argues that under the Washington Principal and Income Act, RCW 11.104, the TIAA/CREF annuity payments are undoubtedly income assets within the trust. Mrs. Templeton relies on RCW 11.104.040(2), which states:

> (2) . . . [I]n the administration of a decedent's estate or of an asset *becoming subject to a trust by reason of a will* all receipts paid on or before the date of death of the testator are principal and all receipts paid after that date are income.
>
> . . .
>
> (b) Receipts in the form of periodic payments . . . including rent, interest, or *annuities,* not due on or before the date of the death of the testator shall be treated as accruing from day to day. *That portion of the receipt accruing before the date of death is principal, and the balance is income.*

(Italics ours.)

██ Appellant properly responds that this statute is inapplicable to situations where an asset becomes subject to the trust by other than a will or administration of an estate. In this case, payments to the trust by TIAA/CREF became subject to the trust by contractual designation and not by the terms of Dr. Templeton's will. Furthermore, RCW 11.104.040(2)(b) is not applicable to the extent that

the terms of a trust agreement provide otherwise. *See* RCW 11.104.020(1)(a). When Dr. Templeton included in the trust the provision entitled "Article IV Authority Granted Trustee", he explicitly conferred upon the Bank the discretionary ability to determine what is income and what is principal. Consequently, the guidelines of RCW 11.104.040 do not control in this case. To hold otherwise would impermissibly overrule the express intent of the trustor. *See Old Nat'l Bank & Union Trust Co. v. Hughes, supra.*

The Bank also appeals the trial court's determination to assess attorney fees against both trust income and principal, and contends that since this litigation pertains to matters concerning the income portion of the trust, all fees should be exacted solely from trust income. The trial court ordered:

> [A]ttorney's fees and costs incurred by both parties provided equal benefit to the income beneficiary and the residual beneficiary of the Templeton trust and therefore, one–half of the total attorney's fees incurred to date should be paid out of the corpus of the Templeton trust and one–half shall be allocated to the income of the trust.

Clerk's Papers, at 26–27.

The operable statute is RCW 11.104.130(1)(d), which states:

> (1) The following charges shall be made against income:
>
> . . .
>
> (d) Court costs, attorney's fees, and other fees on other accountings or judicial proceedings if the matter primarily concerns the income interest, *unless the court directs otherwise*[.]

(Italics ours.) There are no cases interpreting this statute. However, the phrase in the statute "unless the court directs otherwise" makes the allocation of fees between income and principal ultimately a discretionary decision for the trial court judge. For this reason, we will not disturb the allocation of attorney fees made by the trial court.

Finally, we decline to address the question of whether attorney fees incurred on appeal should be assessed against

312

income, principal, or both, and remand that issue to the trial court for determination.

In sum, we reverse the judgment of the trial court and find that the Bank properly exercised its discretion when it determined that the TIAA/CREF annuity payments represented both income and principal and distributed them accordingly.

DOLLIVER, C.J., BRACHTENBACH, DORE, PEARSON, ANDERSEN, CALLOW, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.