**In re Fred H. BAME, ASF/Al & Alma's, Inc. ASF/Excelsior Park Tavern Two, Inc. ASF/Excelsior Financial Properties ASF/Gopher Oil Company, Debtor.**

**Sidney Kaplan, as Trustee of the Fred H. Bame Grantor Retained Income Trust, Plaintiff,**

**v.**

**James E. Ramette, Trustee, Defendant.**

**Bankruptcy No. 99–40683.**
**Adversary No. 01–4009.**

United States Bankruptcy Court,
D. Minnesota.

June 21, 2001.

David Orenstein, Parsinen, Kaplan, Levy, Rosberg & Gotlieb, P.A., Minneapolis, MN, for plaintiff.

Randall Seaver, Fuller, Seaver & Ramette, P.A., Burnsville, MN, for defendant.

James E. Ramette, Chanhassen, MN, trustee.

## FINDINGS OF UNDISPUTED FACT, CONCLUSIONS OF LAW AND ORDER FOR SUMMARY JUDGMENT

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the court on May 22, 2001, on the Plaintiff's Motion for Summary Judgment and the Defendant's Motion for Partial Summary Judgment. David Orenstein appeared on behalf of the Plaintiff Sidney Kaplan ("Kaplan"). Randall Seaver represented the Defendant James Ramette ("Trustee"). Having reviewed the pleadings, the file, and both the initial briefs and supplemental post-hearing briefs submitted by the parties, the court makes the following:

### FINDINGS OF UNDISPUTED FACT [1]

In June 2000, the Trustee commenced an adversary proceeding (Adv. No. 00–4011) to avoid certain stock transfers in which Kaplan in his capacity as trustee of the Bame Grantor Retained Income Trust ("GRIT") was named as a defendant. Kaplan retained the law firms of Parsinen, Kaplan, Rosberg & Gotlieb P.A. and Gray, Plant, Mooty, Mooty & Bennett, P.A. to represent him in that litigation.

Under the GRIT, Debtor, through the trustee, was to fund the trust by transfer of his interest in Al & Alma's Supper Club Corp. ("Al & Alma's"), which was represented by stock certificate no. 1 and held by the GRIT. During the ten year life of the GRIT, Debtor was to receive all income. At termination, his daughter would receive the remainder of the trust assets as beneficiary. The Trustee challenged the validity of the purported stock transfer. Specifically, the Trustee maintained that the trust had never been effectively funded because the trust had not received stock certificate no. 1 but instead had received a subsequently-issued stock certificate no. 4. The defendants, both the trustee and the beneficiary, defended on grounds that the stock transfer was valid because stock certificate no. 4 represented Debtor's interest and that, therefore, the beneficiary was entitled to the GRIT assets which were held for her benefit. Thus, reduced to its simplest, at issue in that adversary proceeding was the ownership of two stock certificates in Al & Alma's.

In August 2000, the parties filed cross-motions for summary judgment in the prior adversary proceeding. Ruling on four of the five counts set forth in the Complaint, the court filed its Findings of Undisputed Fact and Conclusions of Law on Cross–Motions for Summary Judgment on August 22, 2000.

Shortly thereafter, the parties entered into a Settlement Agreement to resolve the remaining issues in that adversary proceeding. The Settlement Agreement was approved by the court. Specifically, under the terms of the Settlement Agreement, Kaplan authorized Al & Alma's to make the final distribution of fifty-percent of the profit of Al & Alma's to the Trustee for

---

1. The parties' Stipulation is incorporated by reference into this section.

the period January 1, 2000 through October 10, 2000, the termination date of the GRIT. The final distribution amount was $138,983.

The Settlement Agreement also expressly provided that the issue of whether Kaplan could obtain reimbursement for attorneys' fees and costs incurred in the adversary proceeding was reserved. As a result, the Trustee deposited a portion of the final distribution amount, approximately $80,000 ("segregated amount"), in a separate account pending resolution of the attorneys' fees and costs reimbursement issue. Kaplan subsequently commenced this adversary proceeding, seeking declaratory judgment that he is entitled to recover attorneys' fees, expenses, and trustee compensation out of the segregated amount.

Several provisions of the GRIT are relevant to the matters in this adversary proceeding. Article 4.1(07) of the GRIT allows the trustee to retain attorneys and other professionals:

> The Trustee shall have the following powers, to be exercised as the Trustee, in the Trustee's discretion, determines to be in the best interests of the trusts created hereunder, such powers being in addition to and not in limitation of all other common law and statutory powers of trustees: ... To employ such agents, experts and counsel as the Trustee shall deem advisable, and to delegate discretionary powers to and rely upon such information or advice furnished by such agents, experts, or counsel; to pay such agents, experts or counsel as the Trustee may employ for the protection or conservation of the trust estates reasonable compensation for services hereunder, and to deduct the same, as well as

all other expenses and costs of administration, from the funds in the Trustee's hands. The Trustee shall have liability only for reasonable care in the selection of such persons or organizations.

GRIT Article 4.1(07). The term "funds" is not defined in the trust document.[2]

Article 4.1(14), in turn, provides that:

> The Trustee shall apply the rules stated in the Minnesota Revised Uniform Principal and Income Act in determining whether receipts shall be income or principal and whether disbursements shall be paid out of income or principal, and the rules of the Minnesota Revised Uniform Principal and Income Act shall be applied in apportioning income and principal between the beneficiaries of any trust created hereunder.

GRIT Article 4.1(14).

Article 4.1(03) gives the trustee power to:

> sell, grant options to buy, convey, transfer, assign, exchange, lease, mortgage, pledge or otherwise dispose of any or all of the properties of the trust estates, including both real and personal property, at such prices, on such terms, to such persons, in such portions, and in such manner as the [t]rustee may in each case deem proper and advisable.

GRIT Article 4.1(03).

Article 4.1(09) gives the trustee similar discretion to:

> borrow money for the purpose of paying taxes or for any other purpose incidental to the administration of the trust estates hereby created, or for the protection and preservation of the assets thereof, and to mortgage or pledge any assets of the trust estates for the payment thereof.

---

**2.** The Settlement Agreement specifically provides that the Trustee waives any defense that Kaplan has no right to payment of fees or

costs out of the GRIT simply because the funds are in possession of the Trustee and not in the hands of Kaplan.

GRIT Article 4.1(09). A later provision enables the trustee to execute documents necessary to effectuate any of the trustee's powers, including the borrowing of money or the pledging of assets. *See* GRIT Article 4.1(11).

For purposes of this adversary proceeding, the parties have stipulated that: (1) the services the two law firms rendered to Kaplan were not duplicative; (2) neither law firm's hours billed were unreasonable or excessive; (3) the two lawyers who defended Kaplan are skilled bankruptcy lawyers; (4) the court's Findings of Undisputed Facts and Conclusions of Law on Cross-Motions for Summary Judgment dated August 22, 2000 are true and correct; and (5) the court may deem as part of the record in this adversary proceeding the pleadings and documents presented in the prior adversary proceeding.

This matter is now before the court on the parties' motions for summary judgment. Kaplan argues that he is entitled to summary judgment. In particular, he asserts that provisions of the GRIT explicitly provide that the trustee may employ and compensate attorneys and that the segregated amount is a source from which the GRIT trustee can draw to satisfy those attorneys' fees and costs incurred in the prior adversary proceeding. Kaplan asks the court to find that he is entitled to $59,755 in attorneys' fees; $5,166 in costs and expenses; and $3,802.50 for trustee's fees and compensation and to further direct the Trustee to transfer to Kaplan $68,743.50 in total out of the segregated amount.

In response, the Trustee seeks partial summary judgment on a discrete issue regarding allocation of principal and income. While the Trustee retains other defenses and arguments regarding Kaplan's entitlement to these fees and costs, resolution of this issue in the Trustee's favor will dispose of the entire adversary proceeding. The Trustee asks the court to find that if the claimed fees and costs sought by Kaplan are in fact compensable by the GRIT, they are payable only from principal, not income. Because the final distribution from Al & Alma's of which the segregated amount is part was income as that term is defined under the Minnesota Uniform Principal and Income Act ("Minnesota UPIA") and the attorneys' fees and costs were incurred in defense of principal, the Trustee argues, Kaplan cannot seek repayment from the segregated amount.

## CONCLUSIONS OF LAW

### A. Standard for Summary Judgment

Kaplan has moved for summary judgment, asserting that, based on the provisions of the GRIT, he is entitled to recover attorneys' fees, costs, and trustee compensation from the segregated amount. The Trustee, in turn, has moved for partial summary judgment, claiming that, under the Minnesota UPIA as it applies via provisions of the GRIT, Kaplan cannot draw on the segregated amount to pay attorneys' fees and other costs. Given that the parties have provided the court with a Stipulation of certain facts, the material facts are undisputed, and disposition of the adversary proceeding hinges on a legal issue, mainly, the interpretation of the GRIT provisions and their interplay with the Minnesota UPIA, the court finds that summary judgment is procedurally appropriate in this instance.

Summary judgment is governed by Federal Rule of Civil Procedure 56, which is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056. Rule 56 provides in relevant part:

The judgment sought shall be rendered forthwith if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party on summary judgment bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party is the plaintiff, it carries the additional burden of presenting evidence that establishes all of the elements of the claim. *See id.* at 325, 106 S.Ct. 2548; *see also United Mortgage Corp. v. Mathern (In re Mathern),* 137 B.R. 311, 314 (Bankr.D.Minn.1992), *aff'd,* 141 B.R. 667 (D.Minn.1992). When the moving party has met its burden of production under Rule 56(c), the burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). This responsive evidence must be probative, and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* If the nonmoving party fails to come forward with specific facts showing that there is a genuine issue for trial, summary judgment is appropriate. *See id.* at 587, 106 S.Ct. 1348; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

 In weighing the evidence, the court may address whether the respondent's theory on the facts is "implausible." *Miller v. Pulos (In re Pulos),* 168 B.R. 682, 689 (Bankr.D.Minn.1994) (citing *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1480 (6th Cir.1989)). The court may also gauge the reasonableness of competing inferences asserted on the same basic evidence. *Id.* (citing *Barnes v. Arden Mayfair, Inc.,* 759 F.2d 676, 681 (9th Cir.1985); *United Mortgage Co. v. Mathern (In re Mathern),* 137 B.R. 311, 322 (Bankr.D.Minn.1992), *aff'd,* 141 B.R. 667 (D.Minn.1992)). The reasonableness of asserted inferences is measured against the viability of the legal theory which they are asserted to support, and is also controlled by the weight and probity of the evidence advanced to support them. *Id.* (citing *Mathern,* 137 B.R. at 322–23). The ultimate question is whether reasonable minds could differ as to the factual interpretation of the evidence on record. *Id.* (citing *Mathern,* 137 B.R. at 323). Thus, in some instances, a court may rely on inferences to grant a motion for summary judgment, even where subjective intent is an issue. *Id.* (citing *Mathern,* 137 B.R. at 322; *Street,* 886 F.2d at 1480).

### B. The Attorneys' Fees, Expenses, and the Trustee Compensation Kaplan Seeks Must Be Paid From Principal

The parties disagree fundamentally about whether Kaplan as GRIT trustee is entitled to recover his attorneys' fees, expenses, and trustee compensation at all. Thus, as a threshold matter, I will briefly mention an issue touched on, though not extensively briefed, nor argued, by the Trustee: whether, having distributed the trust assets to the remainder beneficiary and thereby effectively terminated the GRIT prior to incurring the attorneys' fees, costs, and trustee compensation at issue, Kaplan can now seek indemnity from the settlor via the bankruptcy estate. Given the limited authorities on the precise factual situation before the court, the resolution of this issue is not wholly clear.

 The general rule is clear: trustees are "entitled to indemnity for expenses

properly incurred by them in the administration of the trust" on the premise that "the cost of administering a trust should be borne by the trust estate and not by the trustee personally if those costs are properly incurred." *Scott on Trusts* § 244 (1987) (suggesting that trustees are entitled to indemnity for, *inter alia*, "expenses incurred in defending suits to set aside the trust brought by the settlor or his heirs or personal representatives or by his creditors"; "expenses incurred by him for the benefit of the trust estate in defending actions or in prosecuting actions, where the litigation is not the result of his fault"; and "expenses incurred in obtaining the advice of counsel to aid him in the administration of the trust, where such advice is not required because of his own fault"). The trustee's right to indemnity is not, however, unlimited. For example, the terms of the trust itself or the unavailability of undistributed assets from which to seek reimbursement may limit such right. *See Scott on Trusts* §§ 244.4, 249 (1987). Under certain circumstances, "[i]f the trustee is entitled to indemnity out of the trust estate and he conveys the trust estate to the beneficiaries, he may then have a claim to indemnity from the beneficiaries personally." *Scott on Trusts* § 249 (1987). But generally speaking, "the beneficiaries of a trust are not personally bound to indemnify the trustee for liabilities incurred by him in the administration of the trust in the absence of an undertaking by them to do so." *Scott on Trusts* § 249 (1987).

What is less clear, however, is whether the general rule providing for indemnity to the trustee applies after the termination of the trust. Case law suggests that, in very limited circumstances, a trustee may be entitled to seek indemnity for costs incurred after the trust has been terminated, as is the case here. *See Day v. First Trust & Sav. Bank*, 47 Cal.App.2d 470, 118 P.2d 51 (1941). In *Day*, the appellate court found that the lower court had properly awarded to the trustee attorneys' fees and costs he incurred in defending an action brought by the settlor for negligently investing certain assets and commenced three years after termination of the trust. *See id.*, 118 P.2d at 56–57. The lower court's decision hinged on the fact that the trust termination agreement "expressly provided that certain aspects of the [trustee-trust] relationship should survive" and that it would be inequitable to allow the trustee "to suffer loss at the hands of any person, least of all the [settlor], in properly defending acts done for the benefit of the [settlor] in the administration of the trust." *Id.* at 56–57.

Applying this commentary and case law, Kaplan may not be entitled to indemnity on several grounds. The GRIT provides in rather general terms that the trustee is entitled to indemnity for attorneys' fees incurred in administering or protecting trust assets. *See* GRIT Article 4.1(07). While Kaplan may maintain that the attorneys' fees and other costs from the prior adversary proceeding were incurred precisely for these purposes, because Kaplan had already distributed the assets to the beneficiary and effectively terminated the trust prior to the commencement of litigation, these fees were arguably not properly incurred in the administration of the trust. Nor is there any indication, under the GRIT instrument itself or an agreement between Kaplan as trustee and Debtor as settlor that the trust or the trustee's duties would subsist after termination of the GRIT.

■ While the court could find that the trustee is not entitled to indemnity for the fees and expenses incurred on this ground, I need not decide, or even reach, this issue. Put another way, the issue of whether or

not Kaplan is entitled to recover such fees and costs does not come into play given the court's decision in this case to grant summary judgment in favor of the Trustee. Even if Kaplan were entitled to recover such fees, expenses and compensation, as discussed below, he cannot resort to the segregated amount held by the Trustee as a source for payment.

Turning to the issue of whether he can recover fees and costs from the segregated amount, Kaplan argues that provisions of the GRIT allow the trustee to pay attorneys' fees, expenses, and, trustee compensation out of trust income. Alternatively, relying on several provisions of the Minnesota UPIA, Kaplan argues that the court has discretion to direct that these fees, expenses, and trustee compensation be paid out of trust income. By contrast, the Trustee maintains that reading the GRIT provisions together with the relevant provisions of the Minnesota UPIA, fees and costs incurred in defense of trust principal cannot be paid out of the segregated amount which is trust income.

### 1. *Attorneys' Fees and Expenses*

As set forth in the facts section *supra*, Article 4.1(07) of the GRIT empowers the trustee to employ attorneys and other professionals and "to deduct" the cost of their services and their expenses "from the funds in the [t]rustee's hands." GRIT Article 4.1(07). Article 4.1(14), in turn, instructs the trustee to apportion and apply principal and income under the GRIT in accordance with the terms of the Minnesota UPIA:

The Trustee shall apply the rules stated in the Minnesota Revised Uniform Prin-

cipal and Income Act in determining whether receipts shall be income or principal and whether disbursements shall be paid out of income or principal, and the rules of the Minnesota Revised Uniform Principal and Income Act shall be applied in apportioning income and principal between the beneficiaries of any trust created hereunder.

GRIT Article 4.1(14).

In addition, the Minnesota UPIA contains several relevant provisions.[3] Section 501B.60 states:

A trust must be administered with due regard to the respective interests of income beneficiaries and remainderpersons. A trust is so administered with respect to the allocation of receipts and expenditures if a receipt is credited or an expenditure is charged to income or principal or partly to each:

(1) in accordance with the terms of the trust instrument, notwithstanding contrary provisions of sections 501B.59 to 501B.76;

(2) in the absence of contrary terms of the trust instrument, in accordance with sections 501B.59 to 501B.76;

(3) if neither of the preceding rules of administration is applicable, in accordance with what is reasonable and equitable in view of the interests of those entitled to income as well as of those entitled to principal, and in view of the manner in which persons of ordinary prudence, discretion, and judgment would act in the management of their own affairs.

---

**3.** The Minnesota UPIA is codified as Minn. Stat. Ann. §§ 501B.59 to 501B.76. While the GRIT instrument itself refers to the Minnesota Revised Uniform Principal and Income Act, the parties do not dispute that, if applicable, the governing statutory provisions are those contained in the Revised 1962 version of the Minnesota Uniform Principal and Income Act which has been subsequently amended and is otherwise referred to in this opinion as the Minnesota UPIA. *See* Minn.Stat. Ann. § 501B.76 (West 2000).

Minn.Stat. Ann. § 501B.60 (West 2000). Section 501B.61 defines income and principal. Specifically, "[i]ncome means the return in money or property derived from the use of principal, including return received as ... corporate distributions provided for in section 501B.64." Minn.Stat. Ann. § 501B.61 subd. 1(4) (West 2000). Section 501B.61 also defines principal: "'Principal' means the property set aside by the owner or the person legally empowered so that it is held in trust eventually to be delivered to a remainderperson while the return or use of the principal is in the meantime taken or received by or held for accumulation for an income beneficiary." Minn.Stat. Ann. § 501B.61 subd. 2 (West 2000). Section 501B.61 subd. 3 addresses charges: "After determining income and principal in accordance with the terms of the trust instrument or of sections 501B.59 to 501B.76, the trustee shall charge to income or principal expenses and other charges as provided in section 501B.71." Minn.Stat. Ann. § 501B.61 subd. 3 (West 2000).

Section 501B.71 of the Minnesota UPIA details what charges must be made against income, and those which must be made against principal. Section 501B.71 subd. 3(1) sets forth charges that *must* be made against principal:

> The following charges must be made against principal ... trustee's compensation not chargeable to income under subdivision 1, clause (5),[4] special compensation of the trustee,[5] expenses reasonably incurred in connection with principal, court costs and attorneys' fees

primarily concerning matters of principal, and trustee's compensation computed on principal as an acceptance, distribution, or termination fee.

Minn.Stat. Ann. § 501B.71 subd. 3(1) (West 2000). Section 501B.71 subd. 3(2), in addition, enumerates additional charges that must be made against principal, namely,

> charges not provided for in subdivision 1,[6] including the cost of investing and reinvesting principal, the payments on principal of an indebtedness ... and, unless the court directs otherwise, expenses incurred in maintaining or defending any action to construe the trust or protect it or the property or assure the title of any trust property.

Minn.Stat. Ann. § 501B.71 subd. 3(2) (West 2000). These are the statutory provisions which control the decision on this case.

■ Kaplan argues that Article 4.1(07) of the GRIT which allows the trustee to retain attorneys and to compensate them for fees and expenses from "funds in the trustee's hands" authorizes the trustee to pay fees out of income. Kaplan's argument is misplaced on several grounds. As the Trustee correctly points out, Article 4.1(07) of the GRIT cannot be read in isolation. Rather, Article 4.1(07) must be read together with Article 4.1(14) so as to not render any provision in the trust instrument meaningless or superfluous. *See Medtronic, Inc. v. ConvaCare, Inc.,* 17 F.3d 252, 255 (8th Cir.1994) (stating that

**4.** Subdivision 1, clause (5) provides that "one-half of the trustee's regular compensation for services performed for the income beneficiary or in the production of income ... and all expenses reasonably incurred for current management of principal and application of income" shall be paid out of income. Minn.Stat. Ann. § 501B.71 subd. 1(5) (West 2000).

**5.** The trustee's regular, as distinguished from special, compensation is addressed in subdivision 1, clause (5). *See* Minn.Stat. Ann. § 501B.7 subd. 1(5) (West 2000).

**6.** Section 501B.71 subd. 1 sets out six different types of charges that must be made to income. *See* Minn.Stat. Ann. § 501B.71 subd. 1 (West 2000).

the court must construe contract "as a whole" and "attempt to harmonize all clauses of the contract to give effect to the parties' intention").

Specifically stating that the GRIT trustee must employ the rules of the Minnesota UPIA in allocating disbursements of trust assets as principal or income, this latter provision leads the court to the governing provisions of the Minnesota UPIA. Section 501B.60 of the Minnesota UPIA states that express provisions of the trust take priority over the Act's provisions and that only in the absence of specific language in the trust does the Act fill in the gaps. *See* Minn.Stat. Ann. § 501B.60 (West 2000). Given that the GRIT says nothing about payment of attorneys' fees and expenses being made out of either income or principal, the court must look to the Act's provisions for guidance.

Section 501B.71 subd. 3(1) states that "court costs and attorneys' fees primarily concerning matters of principal" is a "charge[ ]" that "must be made against principal." Minn.Stat. Ann. § 501B.71 subd. 3(1) (West 2000). Section 501B.71 subd. 3(2) even more specifically states that expenses incurred in "maintaining or defending any action to ... protect [the trust] or the property or assure the title of any trust property" must be charged to principal. Minn.Stat. Ann. § 501B.71 subd. 3(2) (West 2000).

The Trustee has correctly characterized the prior adversary proceeding as one primarily (indeed entirely) concerning matters of principal. It also was clearly an action which revolved around protecting title to trust assets. It was a dispute about the ownership of trust assets and, more particularly, those assets held for the remainder beneficiary's benefit. The Trustee's argument in the prior case was that the GRIT had never been effectively funded and Debtor, not the trust, was the owner of all interests in Al & Alma's. Had the Trustee prevailed, the GRIT would have had no assets at all. Indeed, the court's opinion which the parties have stipulated to be. true and correct states that the main issue in that adversary proceeding was whether the bankruptcy estate owned the stock. The prior case was never a dispute over income. In fact, citing the definition of "income" under § 501B.61 of the Minnesota UPIA, the Trustee has labeled the final distribution from Al & Alma's of which the segregated amount is part as "income" and Kaplan has not disputed this characterization.

Because the prior adversary proceeding involved the defense of principal and title to trust assets and because the segregated amount the Trustee holds is income, § 501B.71 subds. 3(1) and 3(2) require that the attorneys' fees and expenses at issue be treated as charges that *must* be made against principal. *See* Minn.Stat. Ann. § 501B.71 subd. 3(1) & 3(2) (West 2000). Minnesota case law and general commentary on trusts also support this result.[7]

---

7. In his supplemental brief, The Trustee indicates that he found one case which could possibly be construed as reaching a contrary conclusion. *See Templeton v. Peoples Nat'l Bank,* 106 Wash.2d 304, 722 P.2d 63 (1986). There, the court set forth the following statutory provision:

> The following charges shall be made against income ... [c]ourt costs, attorney's fees, and other fees on other accountings or judicial proceedings if the matter primarily

concerns the income interest, unless the court directs otherwise.

*Id.* at 67 (quoting RCW 11.104.130(1)(d)). The appellate court indicated that there were no cases interpreting this statutory provision but that "the phrase in the statute 'unless the court directs otherwise' makes the allocation of fees between income and principal ultimately a discretionary decision for the trial court judge." *Id.* at 67. Accordingly, the appellate court found that it would "not dis-

*See generally In re Great Northern Iron Ore Props.,* 311 N.W.2d 488, 495 (Minn. 1981) ("This litigation primarily concerned the proper disposition of trust principal. Therefore, allowances for attorney fees and expenses must be charged against trust principal."); *Scott on Trusts* § 233.3 (4th ed. 1988) ("Where the purpose of the suit is to preserve or increase the principal of the trust estate, it is fair that the costs of the litigation should be paid out of principal.").

Kaplan disagrees with this result and interpretation on several grounds. First, Kaplan asserts that the Minnesota UPIA is wholly inapplicable. He maintains that Article 4.1(07) is the only provision the court need consider and that that provision states the trustee may compensate attorneys from "funds." Funds, according to Kaplan, can only be construed to mean the sole source of money the GRIT ever had—income from distributions of profit from Al & Alma's.

Kaplan's interpretation is strained and renders certain provisions of the GRIT meaningless. Contrary to Kaplan's argument, Article 4.1(07) and Article 4.1(14) of the GRIT can be read together in that the former makes clear that the trustee can compensate attorneys and other professionals without saying how, while the latter specifies from which sources that compensation must come. As such, the income funds the Trustee holds as the segregated amount cannot be reached by Kaplan to pay the attorneys' fees and expenses incurred in connection with principal. Rather, Kaplan can only resort to monies or corpus distributed to the GRIT's beneficiary to seek payment of such attorneys' fees and expenses.

In addition, Kaplan's argument overlooks the fact that, under specific provisions of the GRIT, the trustee had the ability to satisfy payment of the attorneys' fees and expenses from other sources and by other means. For example, Article 4.1(09) specifically provides that the trustee may borrow money and pledge assets to cover certain costs associated with the GRIT, while Article 4.1(03) likewise allows the trustee to dispose and to use GRIT property as he sees fit.

Second, Kaplan takes issue with the distinction the Trustee draws between what must be paid from income and what must be paid from principal. Kaplan relies on the Minnesota UPIA provision which provides that "one-half of the court costs, attorneys' fees, and other fees on periodic accountings or judicial proceedings, unless the court directs otherwise" is a charge that must be made against income. Minn. Stat. Ann. § 501B.71 subd. 1(3) (West 2000).

■ Generally speaking, this Minnesota UPIA provision governing charges against income makes clear that expenses for routine, ordinary, administrative functions and tasks are to be treated as charges against income. *See* Minn.Stat. Ann. § 501B.71 subd. 1 (West 2000). Indeed, under § 501B.71 subd. 1, all six cate-

---

turb the allocation of attorney fees made by the trial court." *Id.* at 67. While the lower court in *Templeton* did allocate attorneys' fees between principal and income in a way that Kaplan urges, this case is readily distinguishable both factually and legally. The appellate court in *Templeton* seems to hang its decision on the fact that the allocation is discretionary in light of the statutory language and merely affirms the lower court's decision with little or no discussion. The appellate court provides no substantive interpretation of the statutory provision. Moreover, *Templeton* involved periodic annuity payments out of trust income. In this instance, however, specific statutory language in § 501B.71 subd. 3 covers non-periodic actions. *See* Minn.Stat. Ann. § 501B.71 subd. 3 (West 2000). Therefore, on various grounds, I find this case neither controlling, nor persuasive.

gories of specified charges that a trustee may make against income are charges that are either routine and ordinary or charges that are specifically related to production of and care of income. *See* M.S.A. § 501B.71 subd. 1(1)-(6) (West 2001). The adversary proceeding in which these attorneys' fees were incurred was not the kind of ordinary expense or routine task this portion of the statute covers.

More specifically, Kaplan's reading of § 501B.71 subd. 1(3) overlooks the fact that "periodic" modifies both "accountings" and "judicial proceedings." *See* Minn.Stat. Ann. § 501B.71 subd. 1(3) (West 2000). *See generally Mandina v. United States,* 472 F.2d 1110, 1112 (8th Cir.1973) ("Qualifying words or clauses refer to the next preceding antecedent except when evident sense and meaning require a different construction.)" (citing Karl Llewellyn, *The Common Law Tradition* 527 (1960)). Under such an interpretation, the adversary proceeding was not a "periodic judicial proceeding." In his supplemental brief, Kaplan asserts that the Minnesota version of the UPIA is broader than the original version which refers only to "periodic judicial accounting" and, as such, was written to cover more than "periodic judicial proceedings." Kaplan did not cite, nor has the court found, any legislative history or case law to support that interpretation.

Third, Kaplan argues that the Minnesota UPIA is inapplicable since it does not address "payment" of attorneys' fees at all, but rather addresses only "charging." *See* Minn.Stat. Ann. § 501B.71 (West 2000). While § 501B.71 does provide that certain "charges" must be made against income or principal, case law suggests that this statutory language indicates from what source certain expenses and fees must be "paid": "The statute gives the court discretion to determine whether certain fees, if awarded, should be *paid* from trust income or

principal." *In re Hormel,* 504 N.W.2d 505, 513 (Minn.Ct.App.1993) (emphasis added) (citing and interpreting Minn.Stat. Ann. § 501B.71 subds. 1(4), 3(1), 3(2) (1992)).

█ Fourth, in his supplemental brief, Kaplan argues that the court should exercise its discretion and direct that the attorneys' fees and other expenses be paid out of income due to the unavailability of trust principal. Kaplan cites § 501B.71 subd. 3(2) and argues that the prior adversary proceeding was an action to protect title to GRIT property; as such, the court can direct that costs and expenses be paid out of something other than principal. Section 501B.71 subd. 3(2) provides:

> The following charges must be made against principal ... charges not provided for in subdivision 1, including the cost of investing and reinvesting principal, the payments on principal of an indebtedness, including a mortgage amortized by periodic payments of principal, expenses for preparation of property for rental or sale, and, unless, the court directs otherwise, expenses incurred in maintaining or defending any action to construe the trust or protect it or the property or assure the title to any trust property.

Minn.Stat. Ann. § 501B.71 subd. 3(2) (West 2000). If, as Kaplan asserts, § 501B.71 subd. 3(2) applies, rather than § 501B.71 subd. 3(1), Kaplan is correct in arguing that I have discretion to countermand the mandatory dictates of § 501B.71 subd. 3(2) and "rule otherwise." Yet, I see no reason for doing so. Indeed, to do so would be to contravene the overall scheme the UPIA is designed to achieve. *See* Carl J. Sinder, *The Revised Uniform Principal & Income Act–Progress But Not Perfection,* 1963 U. Ill. L.F. 473 (suggesting that the basic policy of the UPIA was to allocate court costs and expenses to the interests which receive the benefit).

The benefits of Kaplan's defense of the prior litigation inured squarely and undeniably to the benefit of the remainder beneficiary, Debtor's daughter. The end result of that litigation, which in essence adopted Kaplan's arguments, was that Debtor's daughter's interest in the stock was preserved. Under these circumstances, assessing the costs of defense against the income beneficiary and trustee, who stood in the shoes of the settlor-Debtor, would be unjust.

Kaplan argues that it is unfair for Kaplan's attorneys not to be paid. They admittedly acted prudently and performed well. That is circular reasoning. I cannot and should not assume such attorneys will not be paid or that Kaplan will be unable to recoup his attorneys' fees and expenses from the remainderperson for whose benefit Kaplan's attorneys fought the battle. Moreover, if the trustee is unable to secure indemnification from Debtor's daughter, it is undoubtedly a self-inflicted wound. The trustee made the decision to distribute the assets to the trust, thus terminating the trust, at a time when he knew the bankruptcy estate was claiming or expecting to claim an interest in the stock. By distributing to the remainder beneficiary the only asset available to pay attorneys' fees, without obtaining an indemnification or agreement to defend (if that occurred), the trustee took a calculated risk that he would nòt be entitled to recompense out of trust assets.

Kaplan further relies on *In re Barbikas' Estate*, 171 Cal.App.2d 452, 341 P.2d 32, 39 (1959), for the proposition that the court may direct payment of attorneys' fees and trustee compensation out of income where there is "insufficient principal" available. In that case, the California court was supported in its application of this general principle to the specific facts by statutory language in the California Civil Code which provided for such allocation: "[I]n the case of testamentary trusts where on any current trustees' accounting there are found to be insufficient principal moneys available for the payment of trustees' compensation, the court may direct that for such period the whole or any part of such compensation shall be paid out of any income available, subject to such conditions, if any, relative to reimbursement out of principal as the court may direct." *Id.* (quoting Cal. Civil Code section 730.15 (repealed 1987)). In addition, the California statutory provision contained the caveat that the court may authorize payment from income on the condition that such payments are subsequently reimbursed out of principal when it becomes available. This case is readily distinguishable and inapplicable.

Section 501B.71 subd. 5(b) and (c) contain language similar to the California statutory provision discussed above. Section 501B.71 subd. 5(b), for example, provides:

> If charging a part or all of the trustee's regular compensation to principal, in the judgment of the trustee, is impracticable, because of the lack of sufficient cash and readily marketable assets, or inadvisable, because of the nature of the principal assets, the trustee may determine to pay part or all of the compensation out of income. The decision of the trustee to pay a larger portion or all of the trustee's regular compensation out of income is conclusive, and the income of the trust is not entitled to reimbursement from principal at any subsequent time or times.

Minn.Stat. Ann. § 501B.71 subd. 5(b) (West 2000). However, unlike the statutory provision in *Barbikas*, this provision explicitly addresses only regular trustee compensation which is not at issue in this case.

In conclusion, reading the GRIT as a whole and based on the guidelines set forth in § 501B.71 subd. 3(1) and 3(2) of the Minnesota UPIA, attorneys' fees and expenses must be paid from principal in this instance. Therefore, because the segregated amount is trust income, Kaplan is not entitled to tap into that amount to pay attorneys' fees and expenses incurred in the prior adversary proceeding. The Trustee is entitled to summary judgment on this issue.

### 2. Compensation for Kaplan as GRIT Trustee

The next issue is whether Kaplan may draw from the segregated amount to pay the $3,802.50 in GRIT trustee compensation. Kaplan, in his capacity as GRIT trustee, specifically seeks compensation for time spent meeting with attorneys, preparing for his deposition, compiling trust documents and records, and taking care of other matters related to the prior adversary proceeding. Citing § 501B.71 subd. 1(5), Kaplan argues that at least half of this compensation may be paid out of income. In response, the Trustee suggests that all of this "special" compensation must be charged against principal because it was not incurred in the ordinary course of the trustee's duties.

Section 501B.71 subd. 1(5) provides that "one-half of the trustee's regular compensation for services performed for the income beneficiary or in the production of income whether based on a percentage of principal or income, and all expenses reasonably incurred for current management of principal and application of income" shall be charged against income. Minn. Stat. Ann. § 501B.71 subd. 1(5) (West 2000). Section 501B.71 subd. 3(1), in turn, treats trustee compensation not covered

by the provision above: "The following charges must be made against principal ... trustee's compensation not chargeable to income under subdivision 1, clause (5), special compensation of the trustee, expenses reasonably incurred in connection with principal, court costs and attorneys' fees primarily concerning matters of principal, and trustee's compensation computed on principal as an acceptance, distribution, or termination fee." Minn.Stat. Ann. § 501B.71 subd. 3(1) (West 2000).

Applying these statutory provisions, the trustee does not seek compensation for routine activities or the distribution of income to the GRIT settlor himself. More specifically, in terms of the statutory language, the trustee compensation Kaplan seeks is not "for services performed for the income beneficiary or in the production of income," nor is it for "expenses reasonably incurred for current management of principal and application of income." Minn.Stat. Ann. § 501B.71 subd. 1(5) (West 2000). Rather, the trustee compensation sought concerns out of the ordinary activity related to trust principal and the trustee's holding and distribution of principal to the GRIT's beneficiary. As such, contrary to Kaplan's argument, § 501B.71 subd. 3(1) governs and requires that such compensation be paid out of principal. Accordingly, summary judgment will be granted in favor of the Trustee on this issue as well.

In conclusion, for the reasons discussed above, the court finds that Kaplan may not resort to the segregated amount to recover attorneys' fees, costs and expenses, or trustee compensation for the prior adversary proceeding.[8] Kaplan's motion for summary judgment will, therefore, be denied in its entirety, and the Trustee's motion for partial summary judgment will be

---

**8.** Having determined that the segregated amount is not a source from which Kaplan can draw, I need not reach the issue of

whether Kaplan is entitled to recover the attorneys' fees, costs, and trustee compensation. In other words, a determination that the fees

granted as to all attorneys' fees, costs, and trustee compensation, thereby effectively disposing of this adversary proceeding.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

(1) Plaintiff's Motion for Summary Judgment is DENIED;

(2) Defendant's Motion for Partial Summary Judgment is GRANTED; and

(3) Pursuant to Federal Rule of Civil Procedure 54(b), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7054, there being no further issues pending in this case, the court makes the express determination that there is no just reason for delay of entry of judgment and therefore expressly directs that judgment be entered at this time.

Kaplan seeks are reasonable and/or recoverable would be meaningless because the segregated amount the Trustee holds is unreachable.